UNITED STATES *v.* OREGON RY. & NAV. CO.

(*Circuit Court, D. Oregon.* June 1, 1883.)

1. TAKING PRIVATE PROPERTY—SELECTION OF AND NECESSITY FOR ACTION TO ASCERTAIN VALUE OF—COMPENSATION FOR.

An act of congress (29 St. 138) directed the secretary of war to select such lands at the cascades of the Columbia river, in Oregon, as he might deem necessary and proper for the construction and operation of a canal and locks around the same, and authorized him to take possession of said lands after he had purchased the same; and in case he could not make such purchase at a reasonable price, then to take such possession, as soon as the value of the property was ascertained by a legal proceeding, in the mode provided by the laws of Oregon for the condemnation of lands to public uses therein, in which the department of justice should represent the United States, and the value so ascertained was secured or paid to the owner. *Held*, (1) that the United States could exercise the right of eminent domain within the state, whenever necessary to the exercise of any of the powers conferred upon it by the constitution, upon making just compensation to the owner, which, under the act authorizing the taking in this case, must be secured or paid before the property can be condemned or occupied without the consent of the owner. (2) The legislature is the judge of the necessity of taking private property for public use, and congress, in authorizing the secretary of war to select the necessary lands for the canal and locks, made him the judge of the necessity of such selection—at least, in the first instance; but, *quære*, may not the owner, in an action to condemn the same, allege and prove as a defense thereto, in whole or in part, that such selection, or some portion of it, is wholly unnecessary to the construction or operation of such canal or locks? (3) If the secretary is unable to purchase the lands selected at a reasonable price, the United States may maintain the action provided for in title 3 of the Oregon corporation act, (Or. Laws, 533,) to ascertain the value of said lands, and to procure a condemnation of the same to the use in question; and this court, under section 629, sub. 3, of the Revised

Statutes, has jurisdiction of the same. (4) The selection of lands by the secretary, and the bringing of this action by the United States to ascertain their value, do not alone constitute a taking of private property for public use, and therefore such selection may be made and action prosecuted until said value is so ascertained, although congress has as yet made no provision for paying the same; but judgment of condemnation cannot be given until the compensation is paid to the owner, or into court for him. (5) After the value of the selected lands has been ascertained, the United States may decline to complete the purchase; and in case of unreasonable delay in paying the ascertained value, the defendant may have judgment dismissing the action for want of prosecution.

2. CONDITION PRECEDENT TO ACTION—OFFER OF REASONABLE PRICE.

The conditions precedent to the right to maintain this action in the state court do not apply here, but it is a condition precedent to the right of the United States to maintain this action in this court, that the defendant refused a reasonable price for the property sought to be condemned; but any offer which the secretary, in the exercise of his judgment as to the value of the property, may have made, is to be considered "a reasonable one for the purpose of this action."

3. ALLEGATION—WHEN SUFFICIENT ON DEMURRER.

A general allegation that the defendant refuses to sell certain lands at a reasonable price is good on general demurrer, and the only mode of objecting to it under the Code of Civil Procedure is by a motion under section 84 to make it more definite and certain.

4. VALUE OF LANDS SELECTED.

It is not necessary in this action that the complaint should contain a distinct allegation of the value of the lands selected for condemnation; but, *quære,* that the defendant may tender the plaintiff an issue, in its answer on this point, which the latter must meet in its replication, or the fact as pleaded, will for the purposes of the action, be admitted.

Action to Condemn Private Property to Public Use.

*James F. Watson,* for the United States.

*Joseph N. Dolph,* for defendant.

DEADY, J. This action is brought by the United States to procure the condemnation of four parcels of land, containing in the aggregate about 40 acres, belonging to the defendant, and situate in the county of Wasco, Oregon, for the use of the canal now being constructed by the plaintiff around the cascades of the Columbia river, in Oregon. The defendant demurs to the complaint for that (1) the court has no jurisdiction of the subject-matter; (2) that the plaintiff has no legal capacity to sue; and (3) that the complaint does not state facts sufficient to constitute a cause of action. The complaint alleges that the defendant is a corporation, formed and existing under the laws of Oregon, with its principal office at Portland, and is the owner and in the possession of the four tracts of land sought to be condemned— describing them with metes and bounds, and with reference to the canal; that in the construction of said canal locks and dams are re-

quired; that all and every of said parcels of land are actually necessary for the construction and operation of said canal, and to that end they have been selected by an authorized agent of the plaintiff, acting under the direction of the secretary of war; and that the defendant refuses to sell said parcels of land, or either of them, to the plaintiff at a reasonable price, and concludes with a prayer "that the compensation to be paid for the said premises may be determined in the manner provided by law, and when the amount thereof shall be so determined and paid into court," that judgment may be given condemning the said lands to the uses of the aforesaid.

By section 1 of the river and harbor act of August 14, 1876, (19 St. 138,) there was appropriated $90,000 "for the construction of a canal around the cascades of the Columbia river," of which amount the secretary of war was authorized "to expend so much as in his judgment may be necessary and proper to secure title and right of way for canal and locks, not exceeding $10,000." It was also provided in said section that if it became necessary "to obtain the right of way over any lands for the said canal and locks, the secretary of war shall take possession of and use said lands after having purchased the same; or, in case the said lands cannot be purchased for a reasonable price, then, after having paid for the same, or secured the value thereof, which value may be ascertained in the mode provided by the laws of Oregon for the condemnation of lands for public uses in the state, the department of justice shall represent the interests of the United States in any legal proceedings under this act to obtain the right of way for said canal."

By the act of June 18, 1878, (20 St. 157,) there was appropriated $150,000 "for constructing a canal around the cascades of the Columbia;" and by that of June 14, 1880, (21 St. 189,) an appropriation of $100,000 was made for "continuing operations" in constructing said canal. This was followed by an appropriation of $265,000 for the same purpose, contained in the act of August 2, 1882, (22 St. 205.)

By the said act of June 14, 1880, (21 St. 193,) it was further provided that—

"Such parts of the money appropriated by this act for any particular improvement, requiring locks and dams, as may be necessary in the prosecution of said improvement, may be expended in the purchase, voluntarily or by condemnation, as the case may be, of necessary sites: provided, that such expenditure shall be under the direction of the secretary of war: and provided further, that if the owners of such lands shall refuse to sell them at reasonable prices, then the prices to be paid shall be determined, and the title and juris-

diction procured, in the manner prescribed by the laws of the state in which such lands or sites are situated."

On the argument of the demurrer, counsel for the defendant made the following points:

(1) It does not appear that any portion of the appropriation of 1876 or 1880 is still unexpended, and therefore it does not appear that the plaintiff is now authorized to purchase, or can purchase, the premises; even if the "price" was ascertained by agreement or otherwise; (2) the facts stated do not authorize the plaintiff to maintain a suit to condemn the premises; and (3) the facts showing the necessity of appropriating the lands for the purpose in question, or the inability to agree with the defendant concerning the price thereof, or that the defendant will not sell the same at a reasonable price, or the value of the premises, are not alleged, and therefore the plaintiff is not authorized to maintain this action; citing *Or. Ry. & Nav. Co.* v. *Or. R. E. Co.* in MS. Oct. term, 1882, of the Oregon supreme court, in which it is held that a corporation cannot maintain an action to appropriate a right of way over the lands of another without alleging and proving that the parties were unable to agree as to the compensation to be paid therefor.

Notwithstanding the awkward and confused language of the provisions in the acts of 1876 and 1880, *supra,* they may be fairly interpreted as at least authorizing the United States, by the department of justice, to institute and maintain legal proceedings to ascertain the value of any lands which, in the judgment of the secretary of war, are necessary and proper to secure the right of way for the line of the canal and locks, and so much of the adjacent land as may be necessary and proper for their convenient construction, operation, and maintenance. And this proceeding is to be according to the mode provided by the laws of this state for the appropriation of land to public uses. This "mode" is provided for in title 3 of the corporation act, (Or. Laws, 533,) by which a corporation desiring "to appropriate lands or the right of way" is authorized to maintain an action therefor, in which the right to make such appropriation and the value thereof are tried and determined as in an ordinary action at law.

The government of the United States has the right of eminent domain, and may exercise it within a state whenever necessary to the exercise of any of the powers conferred upon it by the constitution; and no question is made but that the construction of this canal and locks is an exercise of such power. In the exercise of this right it is not restrained by any constitutional limitation, except that it is bound to make or provide a just compensation to the owner for the property

taken. *Kohl* v. *U. S.* 91 U. S. 367; Cooley, Const. Lim. 526; Fifth Amendment to the Const.

The right to appropriate private property to public use rests with the legislative power. A legislative act may declare the necessity of the appropriation. And, such acts being "the law of the land," no other or further adjudication is necessary on this point. Cooley, Const. Lim. 527.

In this case congress has not absolutely or directly selected any land at the cascades for the use of the canal, nor declared that there is a necessity for so doing, but it has committed the matter to the judgment of the secretary of war, who, it is alleged, has, in pursuance of said authority, duly made the selection in question. But this, in contemplation of the legislation by congress, is not an appropriation of the premises to the public use. Before taking possession the secretary must purchase the property, either with the consent of the owner, or at a "price" to be ascertained in a judicial proceeding instituted for the purpose of condemning the same to such use; which "price," in the latter case, must be secured or paid to the owner before the land can be declared or considered subject to the public use. It may be that the plaintiff will decline the purchase at the value fixed upon the property in this proceeding, or that the sum appropriated therefor is insufficient for that purpose, and in such case the proceeding to appropriate may be considered abandoned or delayed until congress furnishes the necessary means wherewith to complete the purchase, or the court, upon the application of the defendant, may order it dismissed, for want of prosecution. *B. & S. R. Co.* v. *Nesbit*, 10 How. 399. But it is not necessary in this proceeding, as claimed by counsel for the defendant, that the plaintiff should allege or prove, in the first instance, any fact to show the necessity of appropriating the property, except that in the judgment of the secretary it is necessary, and was selected by him for that purpose; and if the defendant is allowed, under any circumstances, to contest the necessity of the proposed appropriation, either in whole or in part, he must do so by proper pleading and proof, as a matter of defense. Cooley, Const. Lim. 538 *et seq.* Neither is it necessary to allege or prove that the plaintiff was unable to agree with the defendant as to the value of the premises. By the corporation act of Oregon, *supra,* this inability is made a condition precedent to the right to bring this action, under the authority, of course, of the state, and therefore the fact must be alleged and proved by the plaintiff.

But congress, in authorizing this proceeding, did not, at least in form, make this inability a condition precedent to its maintenance by the plaintiff. But, in effect, the same condition is imposed upon the plaintiff by the act of 1876, which, in substance, provides that this proceeding to compel a sale shall not be resorted to until the owner has refused to sell for a reasonable price; and this fact is alleged in the complaint. But it is objected that the allegation is a general one, without stating when the offer to purchase was made and refused, or what was the price offered. However, this at most is only a defective statement of a material fact, for which the only remedy provided by the Code of Civil Procedure (§ 84) is a motion to make more definite and certain. As the allegation stands, proof may be made under it of all the particulars implied in it. It is sufficient to support a verdict. *Neis* v. *Yocum,* 16 FED. REP. 168. Nor is it necessary that the complaint should contain a distinct allegation as to the value of the premises. Whether they are of much or little or no value is not material to the plaintiff's right to the relief sought. But it may be that the defendant can tender the plaintiff an issue upon this point in its answer, which the latter must meet in his replication, or the fact as pleaded will, for the purposes of the action, be admitted.

It only remains to consider the right of the United States to maintain this action under the circumstances and the jurisdiction of this court over the subject-matter.

In *Kohl* v. *U. S.* the supreme court held that when congress directed the secretary of the treasury to purchase a site for a public building in Cincinnati, and afterwards appropriated money "for the purchase, at private sale or by condemnation, of such site," that the secretary was authorized, under "the national right of eminent domain," to select such site, and that the circuit court within whose jurisdiction the selection was made, had, under the act of 1789, jurisdiction of a proceeding brought by the United States to procure the condemnation of the site for the purpose specified. The provision of the act of 1789, referred to, is now found in section 629 of the Revised Statutes, which reads: "The circuit courts shall have jurisdiction as follows:   *   *   *   *Third,* of all suits at common law where the United States, or any officer thereof, suing under the authority of any act of congress, are plaintiffs."

This is decisive of the right of the United States to maintain this action in this court; and the complaint is sufficient, unless it is in-

cumbent on the plaintiff to allege and prove that congress has absolutely provided for making the owner of the property compensation therefor.

The provision in the acts of 1876 and 1880, appropriating money for the purchase of the land, is not absolute. The amounts appropriated may have been expended in the purchase of the right of way already acquired, or in the construction of the work; or, owing to the time that has elapsed, they may have been returned into the treasury as surplus funds under the provisions of section 3691 of the Revised Statutes.

The obligation to make compensation for property taken for the public use, under the right of eminent domain, is generally regarded as a necessary condition of the exercise of the right, even at common law. Cooley, Const. Lim. 559. And it is made imperatively so by the fifth amendment to the constitution, which, among other things, declares: "Nor shall private property be taken for public use without just compensation." This constitutional protection of the rights of the individual against the public is to be enforced by the court, whenever any department of the government undertakes to act in disregard of it, as the occasion may require. U. S. v. Lee, 106 U. S. 220; [S. C. 1 Sup. Ct. Rep. 240.]

Chancellor KENT (2 Kent, 339) says: "A provision for compensation is a necessary attendant on the due and constitutional exercise of the power of the lawgiver to deprive an individual of his property without his consent."

When property is taken directly by the state, and on its credit, it is generally considered that it is not essential to the validity of the act authorizing it to be done, that it should provide for the payment of the compensation before the property is actually taken. It has been held to be sufficient if adequate provision for compensation is contained in the act; and this provision must be such as will enable the owner to compel the payment of the compensation without unnecessary delay or inconvenience. Bloodgood v. M. & H. R. Co. 18 Wend. 9.

So far as appears, there is now no provision made by the plaintiff for compensating the defendant for this property. The appropriations which once might have been used for that purpose have probably been otherwise expended or lapsed into the treasury; at least, there is nothing appears to the contrary.

The case then stands thus: Congress has in effect directed the secretary of war to select the necessary and proper lands at the

place in question for the construction and operation of the canal and locks, and authorized him to take possession of them as soon as the value is ascertained in a legal proceeding, which the department of justice is authorized to institute for that purpose, and the same is secured or paid to the owner.　The secretary has made the selections, and the owner having, as is alleged, refused to accept a reasonable price therefor, the proceeding to ascertain the value is commenced in this court.　But congress has made no provision for the payment of this value when ascertained, and it may not.

Upon this state of facts my first impression was that this action could not be maintained.　But upon further reflection I am satisfied that it can.　This proceeding, so far, is not a taking of private property for the public use, or one that must necessarily result in such taking.　On the contrary, it is only preliminary thereto, and for the purpose of ascertaining the value of the property proposed to be taken.　The final appropriation of the land will not take place, if ever, until the court gives judgment to that effect, which it is not authorized to do, and will not do, until its value has been paid to the owner or into court for it.

As has been said, congress may not provide for the payment of this value as ascertained in this proceeding, either because it may be thought excessive or from neglect, and in that event the attempt to appropriate the property fails—is practically abandoned.　The only inconvenience that can result from the proceeding is that the defendant may be put to the trouble and expense of establishing the value of its property for naught.　But this can be easily remedied by providing that the plaintiff in such case shall pay the costs of the proceeding, whenever there is a judgment of dismissal.　But as the United States never pays costs, this is an inconvenience not peculiar to this proceeding, and which cannot affect the plaintiff's right to maintain it.

The plaintiff is, in my judgment, entitled to maintain this proceeding, so far as to ascertain the value of the lands selected by the secretary of war for the public use, without showing that it has made any provision for the payment of such value; but before it can have judgment condemning the lands to such use it must pay the same to the owner.　The demurrer is, therefore, overruled.