FOLTZ et al. v. ST. LOUIS & S. F. RY. CO.

(Circuit Court of Appeals, Eighth Circuit. February 12, 1894.)

No. 293.

1. JUDGMENT—COLLATERAL ATTACK—EMINENT DOMAIN—JURISDICTION.

A judgment of condemnation of land rendered by a court having jurisdiction over the parties and power to condemn land in proper cases is not subject to collateral attack on the ground that it was rendered in favor of a party who had not the legal capacity to condemn land, since that is a matter to be determined by the court rendering the judgment.

2. INJUNCTION—DEFENSES—REMEDY AT LAW.

It is no objection, to a suit brought to enjoin an action of ejectment on the ground that the defendant has acquired title by condemnation proceedings, and to quiet the defendant's title, that such title constitutes a perfect defense to the action at law, since the remedy at law is not as efficient as a decree in such suit.

3. SAME—APPEAL—WAIVER.

The objection to an injunction suit, that the plaintiff has an adequate remedy at law, comes too late when raised for the first time on appeal.

Appeal from the Circuit Court of the United States for the Western District of Arkansas.

Suit for injunction brought by the St. Louis & San Francisco Railway Company against Mary A. Foltz, and revived, after her death, against Jacob K. Foltz, her husband, and Joseph R. Foltz, Genevieve O. Foltz, Frances A. Foltz, James A. Foltz, and Jacob K. Foltz, her children. Plaintiff obtained a decree. Defendants appeal.

This is an appeal from a decree enjoining the appellant, Mary A. Foltz, who is a married woman, from prosecuting an action of ejectment against the St. Louis & San Francisco Railway Company, the appellee, to recover possession of certain lands in Ft. Smith, Ark., occupied by it for railroad purposes. The above-named appellant, Mary A. Foltz, died during the pendency of the appeal in this court, and by consent an order was entered in this court reviving the cause, as to her heirs at law, in the name of the above appellants. Section 11, art. 12, of the constitution of Arkansas, declares that no foreign corporation shall have power to condemn or appropriate private property. Section 5530 of Mansfield's Digest of the Laws of Arkansas provides that a foreign railroad corporation may, under certain circumstances, purchase or lease the property and franchise of any railroad company organized under the laws of that state, and that such lease or purchase "shall carry with it the right of eminent domain, held and acquired by said company at the time of such lease or sale." The appellee is a corporation foreign to the state of Arkansas, but in 1882, in accordance with the provisions of section 5530, supra, it had purchased all the property and franchises of a railroad corporation organized under the laws of Arkansas, including its right of eminent domain. In May, 1883, the appellee presented its petition to the circuit court of Sebastian county, Ark., for the condemnation of the lands in question, after having served due notice of its intended

application on the appellant, and she appeared in the proceeding. This proceeding was removed at the May term, 1883, on the petition of the appellee, to the circuit court of the United States, on the ground that the appellee was a corporation of the state of Missouri, and the appellant a citizen of Arkansas. At the November term, 1883, a contested trial by jury was had in that court to determine the amount of damages sustained by the appellant through the appropriation of the land by the appellee for railroad purposes, and a verdict was rendered, fixing the amount at $4,180.84. March 28, 1884, a judgment was rendered that the appellant should recover this amount of the appellee; and that, upon the payment thereof, the right of way—the use and possession of the land in question—should vest in the appellee forever. On the same day the appellee paid, and the defendant received, the amount of this judgment. The land condemned by this judgment comprised 31 7-100 acres. On August 20, 1890, the appellant brought an action in ejectment against the appellee in the circuit court of Sebastian county, Ark., for 24 7-100 acres of this land. November 15, 1890, that action was removed to the court below. December 31, 1891, the appellee brought its bill in equ'ty in that court to enjoin the prosecution of the action at law, and to quiet its title to the land in dispute. The appellant answered. The case was heard on bill and answer, and a decree rendered in favor of the appellee for the relief prayed in its bill. The appeal is from this decree.

Britton H. Tabor, for appellants.

Edward D. Kenna (B. R. Davidson and H. S. Abbott, on the brief), for appellee.

Before CALDWELL and SANBORN, Circuit Judges, and THAYER, District Judge.

SANBORN, Circuit Judge (after stating the facts). The power of eminent domain—the right to take the property of the citizen for public use—is an attribute of sovereignty. It lies dormant in the state until the right to exercise it is granted by the state to some public or quasi public corporation, or until it is exercised by the state itself. It follows that no corporation has the right to exercise this power unless the state has granted to it that right; and it is conceded that, under the constitution of the state of Arkansas, a foreign corporation, as such, cannot have this right. Holbert v. Railroad Co., 45 Iowa, 23, 26; State v. Scott (Neb.) 36 N. W. 121, 127; Trester v. Railway Co., Id. 502, 505. The questions presented by this case, and pressed upon our attention in the brief and argument of counsel, are: First. Is the judgment of condemnation of March 28, 1884, void,—a nullity,—so that it may be disregarded on a collateral attack? Second. Did the appellee, though unauthorized, as a foreign corporation, to exercise the power of eminent domain, obtain the right, under the constitution and laws of Arkansas, to exercise that power, by its purchase of the property and franchise of the domestic railroad corporation of that state which had that right? Third. Is the appellant, who has been a married woman during all these proceedings, estopped to recover this land by her acceptance of the money awarded her for it by the judgment of condemnation?

Regarding the first question, the contention of counsel for appellant is that, since the appellee was a foreign corporation, and was not one of the parties to whom the right to exercise the power of eminent domain was granted by the state, the circuit court was without jurisdiction to render a judgment of condemnation in its

favor, and that judgment is a nullity. Conceding, but not deciding, that the appellee had no right to condemn land for public use, let us examine this question. The appellant was properly served with the statutory notice in the condemnation proceedings, and she appeared and participated in the jury trial to determine the amount of compensation she should receive. In that proceeding a controversy arose between a citizen of Missouri and a citizen of Arkansas, and the amount in controversy was such as to give the circuit court jurisdiction. That court, therefore, had jurisdiction of the parties. It goes without saying that the circuit court had the right and the power to render a judgment of condemnation in a proper case in favor of a railroad corporation which had the right to exercise the power of eminent domain. Kohl v. U. S., 91 U. S. 367, 375; U. S. v. Oregon Ry. & Nav. Co., 9 Sawy. 61, 16 Fed. 524. The state of Arkansas had granted to many corporations the right to exercise this power, and, if the circuit court had rendered a judgment of condemnation in a proper case in favor of any one of these corporations, its judgment would unquestionably have been valid. The contention is that it is an absolute nullity in this case, because the court entered such a judgment in favor of a corporation which had not that right. Stripped of argument and verbiage, the position is that this judgment is void because the appellee had not legal capacity to sue for it, although there were many parties that had such capacity, in whose favor the circuit court had ample power to enter such a judgment. But the question of the legal capacity of the plaintiff to prosecute condemnation proceedings, like that of the necessity for the condemnation, and that of the public or private purpose of it, is a question that the trial court must necessarily hear and determine in every condemnation proceeding. Is every judgment in which the court committed an error in the decision of one of these questions, without the jurisdiction of the court, a nullity, and only those in which it has made no mistake valid? Jurisdiction of the subject-matter is the power to deal with the general abstract question, to hear the particular facts in any case relating to this question, and to determine whether or not they are sufficient to invoke the exercise of that power. It is not confined to cases in which the particular facts constitute a good cause of action, but it includes every issue within the scope of the general power vested in the court, by the law of its organization, to deal with the abstract question. Nor is this jurisdiction limited to making correct decisions. It empowers the court to determine every issue within the scope of its authority according to its own view of the law and the evidence, whether its decision is right or wrong, and every judgment or decision so rendered is final and conclusive upon the parties to it, unless reversed by writ of error or appeal, or impeached for fraud. Insley v. U. S., 14 Sup. Ct. 158; Cornett v. Williams, 20 Wall. 226; Des Moines Nav. & R. Co. v. Iowa Homestead Co., 123 U. S. 552, 8 Sup. Ct. 217; In re Sawyer, 124 U. S. 200, 221, 8 Sup. Ct. 482; Skillerns v. May's Ex'rs, 6 Cranch, 267; McCormick v. Sullivant, 10 Wheat. 192; Hunt v. Hunt, 72 N. Y. 217; Colton v. Beardsley, 38 Barb. 30, 52; Otis v. The Rio Grande, 1 Woods, 279, Fed. Cas. No. 10,613; Hamilton v.

Railroad Co., 1 Md. Ch. 107; Evans v. Haefner, 29 Mo. 141, 147; State v. Weatherby, 45 Mo. 17; Rosenheim v. Hartsock, 90 Mo. 357, 365, 2 S. W. 473; State v. Southern Ry. Co., 100 Mo. 59, 13 S. W. 398; Hope v. Blair, 105 Mo. 85, 93, 16 S. W. 595; Musick v. Railway Co., 114 Mo. 309, 315, 21 S. W. 491. Wherever the right and the duty of the court to exercise its jurisdiction depends upon the decision of a question it is invested with power to hear and determine, there its judgment, right or wrong, is impregnable to collateral attack, unless impeached for fraud.     In Colton v. Beardsley, 38 Barb. 30, 51, 52, the New York court said:

"When the jurisdiction of an inferior tribunal depends upon a fact which such tribunal is required to ascertain and determine, such decision is final until reversed in a direct proceeding for that purpose. The test of jurisdiction in such cases is whether the tribunal has power to enter upon the inquiry, and not whether its conclusion in the course of it is right or wrong."

In Des Moines Nav. & R. Co. v. Iowa Homestead Co., supra, a judgment of the United States circuit court was collaterally attacked because it appeared on its face that the plaintiff and some of the defendants were citizens of Iowa, and hence that that court appeared to have no jurisdiction of the action.     But Chief Justice Waite, delivering the opinion of the supreme court, said:

"Whether, in such a case, the suit could be removed, was a question for the circuit court to decide when it was called on to take jurisdiction. If it kept the case when it ought to have been remanded, or if it proceeded to adjudicate upon matters in dispute between two citizens of Iowa when it ought to have confined itself to those between citizens of Iowa and citizens of New York, its final decree in the suit could have been reversed, on appeal, as erroneous, but the decree would not have been a nullity. To determine whether the suit was removable in whole or in part, or not, was certainly within the power of the circuit court. The decision of that question was the exercise and the rightful exercise of jurisdiction, no matter whether in favor of or against taking the cause."

In Evans v. Haefner and Hamilton v. Railroad Co., supra, judgments of condemnation were collaterally attacked on the ground that the uses for which the lands were condemned were private and not public uses.     It goes without saying that private property cannot be condemned for private use; but the courts of Maryland and Missouri held that the judgments were conclusive of this question on a collateral attack.

There are three questions that the trial court must determine in every condemnation proceeding, viz.:   First. Has the plaintiff corporation legal capacity to exercise the power of eminent domain? Second. Is it necessary for the plaintiff to take the land it seeks to condemn?     Third. Does it seek it for a public use?     Every judgment of condemnation is necessarily an affirmative decision of each of these questions.     If either of them is erroneously decided, the judgment may be reversed by a writ of error for that purpose; but to hold that either of these questions can be tried de novo in an action of trespass or of ejectment, or in any other collateral proceeding, would be counter to our views of justice, of the reason of the case, and of the uniform decisions of the courts.     It is just and reasonable that one who contests the right of a railroad company to take his land should carry his contest to an end before he takes his award,

and before the railroad company incurs the expense of improving the property for railroad purposes. It would work great injustice and produce much confusion of rights to permit these judgments of the courts to be disregarded, and the questions they decide to be retried in collateral actions, in which judges and juries might have very different views from those which resulted in the original judgments. The decisions of the courts, to some of which we have referred, leave no doubt that it was the right and the duty of the circuit court to hear and determine the very question whether or not the appellee had the right to exercise the power of eminent domain before it entered its judgment in the condemnation proceeding, and that judgment is conclusive evidence that it did determine that question in favor of the appellee. The judgment was strictly within the powers conferred upon that court by the law of its organization. It had authority to condemn lands for public use in a proper case presented to it. If that judgment was erroneous, it might have been reversed by a writ of error; but the decision of the question that is now admitted to be presented anew was the exercise of jurisdiction, and the rightful exercise of that jurisdiction, and, whether right or wrong, it cannot be successfully attacked in a collateral proceeding. We have not failed to examine carefully the authorities cited by the counsel for the appellant. They are not in conflict with the views we have expressed. The line of demarcation which separates the case before us from those cited by appellant's counsel is that which marks the limits of the powers of the courts to hear and determine. Judgments within the scope of the power to hear and determine vested in a court by the law of its organization are not void in the face of a collateral attack, whether right or wrong, and such is the judgment before us; but judgments rendered in cases which are not within the scope of this power are nullities. The following cases, cited by appellant's counsel, are illustrations of this rule: In re Sawyer, 124 U. S. 200, 8 Sup. Ct. 482, in which the police judge of the city of Lincoln, Neb., brought suit against the mayor and councilmen of that city, in the federal court, to enjoin them from enforcing a judgment against him for misfeasance in office. It was not within the power of the federal court, sitting in equity in any case, or under any circumstances, to determine such a controversy and to grant the injunction there sought, and its decree to that effect was therefore held to be a nullity. Whitehead v. Railroad Co., 28 Ark. 460, in which a judgment of condemnation of land was rendered under an unconstitutional law. As the law which vested the court with the only power it had to render the judgment was void, the judgment itself was so. The stream could not rise higher than its source. Lessee of Hickey v. Stewart, 3 How. 751, in which a decree by a state court of chancery establishing the validity of a Spanish grant, over which no power had ever been conferred upon that court, was held void, and its exercise of jurisdiction declared to be a mere usurpation of judicial power. Again, a judgment or decree of a court in excess of the power to hear and determine granted to it by the law of its organization may be void for such excess, although the court may have jurisdiction of the parties and of the subject-matter. Illustra-

tions of this rule are Bigelow v. Forrest, 9 Wall. 339, 351, in which a judgment of condemnation and sale of the fee to land, when the court was expressly prohibited by act of congress from condemning any rights outlasting the life of Forrest, was held void for the excess above the life estate; Ex parte Lange, 18 Wall. 163, 176, in which the statute authorized the punishment of a criminal by fine or imprisonment, and after the court had imposed a sentence of fine and imprisonment, and the criminal had paid the fine, the trial court vacated its judgment and sentenced him to imprisonment, and the supreme court declared the latter judgment void, because it was not within the power of the court, in any case, to punish the criminal twice for the same offense; Day v. Micon, 18 Wall. 156; and U. S. v. Walker, 109 U. S. 258, 266, 3 Sup. Ct. 277. In all these cases, which are cited by appellant's counsel, the judgments or decrees were beyond the powers conferred on the courts by the laws of their organization. In the other cases cited, viz. Holbert v. Railroad Co., 45 Iowa, 23, 26, State v. Scott (Neb.) 36 N. W. 121, 127, 128, and Trester v. Railway Co., Id. 505, the question of the validity of a judgment when attacked collaterally was not considered. No case has been called to our attention in which it is held that a judgment of condemnation of land, in favor of a party who had not the legal capacity to exercise the power of eminent domain, was a nullity. In the opinion of the supreme court of Nebraska in Trester v. Railway Co., supra, which was an appeal from an order of removal of a condemnation proceeding to the federal court, on the ground that the railroad company was a foreign corporation, is found the only declaration to that effect that we have seen. That court, in speaking of the order of removal made by the court below, did say:

"Its order of removal was therefore a nullity, and no jurisdiction could be thereby conferred on the federal court. Any action that might be taken by that court would be equally void; and although the parties might appear before it, and invoke its powers to the fullest extent, yet they could give it no jurisdiction to take any action whatever."

This declaration was not necessary to the decision of the case before it, but that court reversed the order of removal, and remanded the case with directions to dismiss it on the ground that the court below had no jurisdiction because the railroad company had no power to condemn lands. Upon a rehearing, however, this decision was overruled and the case remanded for trial. No opinion was filed on the rehearing, but in Trester v. Railway Co. (Neb.) 49 N. W. 1110, that court says of the decision on the rehearing:

"The legal effect of the decision, however, was to overrule the former opinion, in so far as it held that the condemnation was void, and that neither the county judge nor the district court had jurisdiction to take any action in the matter."

In other words, the supreme court of Nebraska finally came to the same conclusion at which we have arrived,—that the trial court had jurisdiction to hear and determine the question whether or not the railroad company had the legal capacity to sue for the condemnation of private property for public use. The result is that the judgment of condemnation of March 28, 1884, was final and conclusive

between the parties to it, and could not be successfully attacked in an action of ejectment. This conclusion renders it unnecessary to consider the other two questions discussed in the argument, and stated in the early part of this opinion.

A single objection to the decree below remains to be considered. It is that, as the judgment of condemnation is valid, the appellee had a perfect remedy at law, and this bill in equity should have been dismissed. In Preteca v. Land Grant Co., 4 U. S. App. 327, 330, 1 C. C. A. 607, 50 Fed. 674, Judge Caldwell, in delivering the opinion of this court, said:

"It may be true that the plaintiff had a remedy at law, but 'it is not enough that there is a remedy at law; it must be plain and adequate, or, in other words, as practical and as efficient to the ends of justice and its prompt administration as the remedy in equity.' Boyce's Ex'rs v. Grundy, 3 Pet. 210, 215; Oelrichs v. Spain, 15 Wall. 211, 228."

The appellant is claiming the land here in dispute, and is prosecuting her action of ejectment to recover it. The decree below enjoins that and like actions, and quiets the title in the appellee. It is true that the latter has a perfect defense to the action of ejectment; but is that defense as practical and as efficient to the ends of justice as the remedy by this decree? What is to prevent the appellant from dismissing her action in ejectment, and bringing trespass or another action of ejectment? And is it as efficient a remedy to hold the shield of this judgment against successive actions at law as is a final decree that forever ends all controversy? Moreover, this objection was not made in the court below. The appellant interposed no demurrer. She answered to the merits, and went to a hearing on bill and answer without objection that this suit could not be maintained, because the remedy of the appellee at law was complete. The objection she now makes is one of those that may be waived if not made at the threshold. It is too late to make it for the first time in the appellate court. Preteca v. Land Grant Co., supra; Reynes v. Dumont, 130 U. S. 354, 9 Sup. Ct. 486; Tyler v. Savage, 143 U. S. 79, 97, 12 Sup. Ct. 340; Hollins v. Iron Co., 14 Sup. Ct. 127, 128; Insley v. U. S., 14 Sup. Ct. 158, 159. For these reasons, the decree below must be affirmed, with costs, and it is so ordered.