### HOUCK et al. v. UNITED STATES.

(Circuit Court of Appeals, Eighth Circuit, November 6, 1912.)

No. 3,699.

1. LEVEES (§ 37*)—INTERFERING WITH GOVERNMENT WORKS—CONSTRUCTION OF STATUTE—"LEVEE."

Act March 3, 1899, c. 425, § 14, 30 Stat. 1152 (U. S. Comp. St. 1901, p. 3543), providing that "it shall not be lawful for any person or persons to take possession of or make use of for any purpose, or * * * injure, obstruct by fastening vessels thereto, or otherwise or in any manner whatever impair the usefulness of any sea wall, bulkhead, jetty, dike, levee, wharf, pier, or other work built by the United States, * * * for the preservation and improvement of any of its navigable waters or to prevent floods," etc., applies to a levee built by authority of Congress to prevent floods from overflow of the Mississippi, although it may be several miles from the bank of the river, and persons who willfully obstruct or injure such levee, whether fully or partly completed, are subject to criminal prosecution therefor under section 16 of the act.

[Ed. Note.—For other cases, see Levees, Cent. Dig. § 13; Dec. Dig. § 37.*

For other definitions, see Words and Phrases, vol. 5, pp. 4100, 4101.]

2. LEVEES (§ 13*)—GOVERNMENT IMPROVEMENT—LOCATION.

Act June 4, 1906, c. 2572, 34 Stat. 208 (U. S. Comp. St. Supp. 1911, p. 1550), authorizing the construction of levees on the Mississippi river under direction of the Secretary of War in accordance with the plans and recommendations of the Mississippi River Commission, vests a large discretion in such officers as to the location of the levees, and in the exercise of such discretion they may lawfully locate a levee at a distance from the bank of the river.

[Ed. Note.—For other cases, see Levees, Cent. Dig. § 4; Dec. Dig. § 13.*]

3. EMINENT DOMAIN (§ 242*)—CONDEMNATION PROCEEDINGS—CONCLUSIVENESS OF JUDGMENT.

In such a criminal prosecution, where the obstruction was on land over which the United States had acquired right of way by a decree of condemnation in proceedings instituted under authority of Act April 24, 1888, c. 194, 25 Stat. 94 (U. S. Comp. St. 1901, p. 3525), the defendants cannot collaterally attack the validity of such decree.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. § 626; Dec. Dig. § 242.*]

In Error to the District Court of the United States for the Eastern District of Missouri; David P. Dyer, Judge.

---

Criminal prosecution by the United States against Giboney Houck and others. From a judgment of conviction, defendants bring error. Affirmed.

Chester H. Krum, of St. Louis, Mo., for plaintiffs in error.

Charles A. Houts, U. S. Atty., and Charles H. Daues, Asst. U. S. Atty., both of St. Louis, Mo., for defendant in error.

Before SANBORN and CARLAND, Circuit Judges, and WM. H. MUNGER, District Judge.

WM. H. MUNGER, District Judge. From the facts in this case, it appears that the United States was constructing a levee along the Mississippi river, near and below Cape Girardeau, Mo.; said levee being constructed by a contractor under the direction and supervision of engineers of the United States, detailed by the Secretary of War for that purpose. This levee crossed the railroad track and right of way of the Cape Girardeau & Thebes Bridge Terminal Railroad Company. The government had theretofore condemned a right of way for the construction of the levee 250 feet in width, over and across the right of way of said Bridge Terminal Railroad Company. The section of the levee had been completed on either side of the railroad right of way, said levee at the base being some 70 feet in width, and the portions on either side had been constructed up to practically the ties of the railroad, and sloped up towards the top. The levee, when completed, was to be some 10 feet high. The Bridge Terminal Railroad Company, something like a year before, had been requested to remove its tracks or elevate them, so they would pass over and above the levee when completed. This the Bridge Terminal Railroad Company refused to do. Something like a month before the occurrence in question, a similar request was made upon the Bridge Terminal Railroad Company, and they again refused to act. About the 8th of December, 1910, one Douglas Jordan, superintending the construction of the work for the government, with some men, removed the rails and ties, upon the right of way which had been acquired by the condemnation proceedings, and the contractor proceeded with the work of filling in the gap, so as to complete the construction of the levee. He had filled in across the gap a portion of the width of the levee to a height of some three feet, when the plaintiffs in error, with an engine, ran a car against the portion of the levee constructed across the track and up to the end of the rails, so as to, in a measure, destroy and deface the work. That night, or early the following morning, they ran some five cars in onto the work, dumping them over in such a way as to injure the work that had been constructed, and temporarily impeded further construction of the work.

They were indicted in the United States Court for the Eastern District of Missouri; the indictment containing two counts. In the first, they were charged with unlawfully defacing and injuring a certain levee built, owned, and controlled by the United States, for the preservation or improvement of a navigable river of the United States, to wit, the Mississippi river, as authorized by an act of Congress, ap-

proved June 4, 1906, entitled "An act to enlarge the authority of the Mississippi River Commission in making allotments and expenditures of funds appropriated by Congress for the improvement of the Mississippi river," and further by the River and Harbor Act approved March 2, 1907 (chapter 2509, Statutes at Large, vol. 34, p. 1103). In the second count, they were charged with obstructing and knowingly aiding and abetting in obstructing a certain levee built, owned, and controlled by the United States, etc. They were tried, convicted, and sentenced to pay a fine.

On the trial of the case the court admitted, over the objection and exception of the defendant, the judgment of condemnation by the government of the United States of the right of way in question, and also admitted, over the objection and exception of the defendant, the receipt of the Cape Girardeau & Thebes Bridge Terminal Railroad Company for the amount of money awarded to it in such condemnation proceeding.

The court also admitted in evidence the contract between the United States and one P. H. Rogers, for the construction of this levee, and also evidence of the death of P. H. Rogers, and the letters testamentary to T. H. Walsh, as his executor; also admitted the evidence of one Kerr, an engineer employed by the government, as to the condition of the work on the levee, and what was done at the point of the crossing of the railroad track; also admitted the evidence of one Jordan, as to the acts and conduct of the defendants, with reference to said projected levee on the crossing of the track. The admission of this testimony is embraced in the six paragraphs of the first assignment of error.

It is further assigned as error that the court, in his charge to the jury stated:

(1) That he was not prohibited from stating to them what appeared to the court to be the facts.

(2) That certain acts with reference to putting in cars in the gap of the levee had been done, at least to the court's satisfaction.

(3) That the evidence showed, to the satisfaction of the court, that a car was run into the gap by the defendants.

(4) That although the levee was not completed, it was an offense to injure or obstruct the work being done.

(5) That if a car was run into the gap and the work going on obstructed, and such part of the work as had been done defaced, an offense was committed.

[1] The principal ground which is urged in support of the assignments of error is that the act of Congress, upon which the indictment was based, did not authorize the levee in question, for the reason that it appears from the evidence that this part of the levee was upwards of two miles from the bed or bank of the Mississippi river, and hence was not a levee within the meaning of the statute. The applicable sections of the statute read as follows:

"Sec. 14. That it shall not be lawful for any person or persons to take possession of or make use of for any purpose, or build upon, alter, deface, destroy, move, injure, obstruct by fastening vessels thereto or otherwise, or in

any manner whatever impair the usefulness of any sea wall, bulkhead, jetty, dike, levee, wharf, pier, or other work built by the United States, or any piece of plant, floating or otherwise, used in the construction of such work under the control of the United States, in whole or in part, for the preservation and improvement of any of its navigable waters or to prevent floods, or as boundary marks, tide gauges, surveying stations, buoys, or other established marks, nor remove for ballast or other purposes any stone or other material composing such works; Provided, that the Secretary of War may, on the recommendation of the Chief of Engineers, grant permission for the temporary occupation or use of any of the aforementioned public works when in his judgment such occupation or use will not be injurious to the public interest."

"Sec. 16. That every person and every corporation that shall violate, or that shall knowingly aid, abet, authorize, or instigate a violation of the provisions of sections thirteen, fourteen, and fifteen of this act shall be guilty of a misdemeanor and on conviction thereof shall be punished by a fine not exceeding twenty-five hundred dollars nor less than five hundred dollars, or by imprisonment (in the case of a natural person) for not less than thirty days nor more than one year, or by both such fine and imprisonment, in the discretion of the court; one-half of said fine to be paid to the person or persons giving information which shall lead to conviction. And any and every master, pilot, and engineer, or person or persons acting in such capacity, respectively, on board of any boat or vessel, who shall knowingly engage in towing any scow, boat or vessel loaded with any material specified in section thirteen of this act to any point or place of deposit or discharge in any harbor or navigable water, elsewhere than within the limits defined and permitted by the Secretary of War, or who shall willfully injure or destroy any work of the United States contemplated in section fourteen of this act, or who shall willfully obstruct the channel of any waterway in the manner contemplated in section fifteen of this act, shall be deemed guilty of a violation of this act, and upon conviction be punished as hereinbefore provided in this section, and shall also have his license revoked or suspended for a term to be fixed by the judge before whom tried and convicted. And any boat, vessel, scow, raft, or other craft used or employed in violating any of the provisions of sections thirteen, fourteen, and fifteen of this act shall be liable for the pecuniary penalties specified in this section, and in addition thereto for the amount of the damages done by said boat, vessel, scow, raft, or other craft, which latter sum shall be placed to the credit of the appropriation for the improvement of the harbor or waterway in which the damage occurred, and said boat, vessel, scow, raft, or other craft may be proceeded against summarily by way of libel in any district court of the United States having jurisdiction thereof."

Counsel for plaintiffs in error, in their brief, state their contention as follows:

"It is obvious that the levee contemplated by the statute is not one inland and miles distant from the bank of a navigable stream. Noscitur a sociis. The word 'levee' is associated with sea wall, bulkhead, jetty, dike, wharf, pier, or other like work built by the United States. The reading of the statute makes it obvious Congress intended to cover structures which are accessible from the water itself, structures to which vessels might be moored, or at which they might be anchored, or to which they might be attached, and you might just as well talk about building a levee on a hill forty miles from the river and have it covered by this section, as to talk about the levee built where this one was built being covered by that statute. * * *

"Now, doesn't it involve a degree of absurdity to contend that you can go inland under this statute and find a structure whose injury rendered this statute operative as against an individual who injured the structure, when every word in all the sections, from beginning to end, contemplates a structure to which access is to be had from the body of water upon which that structure is erected. If it is the water of a navigable river, from that navigable river; if it is the water of a navigable lake, from that navigable lake;

201 F.—55

and if it is the water of a sea, or in case of structure in any harbor, from that sea or harbor?

"Why talk about an injury to a structure of this description at the hands of a master of a vessel, when the thing to be injured is five miles inland, when there is not a suggestion of water in connection with it, even when the Mississippi river overflows its banks, and then floods the lowlands to the extent of a few feet?"

[2] The foregoing excerpts from the brief of counsel for plaintiffs in error·are given as it is a succinct statement of their theory why the judgment is erroneous. We think, however, counsel overlook the fact that the purpose of the statute in question, in providing for the construction of levees, was twofold: First, to improve the navigability of the river; second, to provide against destruction by overflows. If it be conceded that the main and primary purpose was to improve the navigation of the river, we do not think, even then, it was essential or necessary that the levees follow the bank of the river in all of its meanderings. The evidence shows that at the point in question there was a sharp bend in the river, which formed a sort of a narrow peninsula, and that the levee was constructed across the base, so as to prevent the flooding of the country during high water. To follow along the bank of the river in all of its meanderings would cause a useless and unnecessary expense. Of course, the act contemplated that much of the way and probably the principal part of the levee work would be along the water bank of the river, and as to such places the prohibition against "fastening vessels thereto, or otherwise, or in any manner whatever impairing the usefulness of any sea wall, bulkhead, jetty, dike, levee, wharf, pier," etc., is applicable; but that is not the only prohibition. The prohibition is against "any person or persons to take possession of or make use of for any purpose, or building upon, alter, deface, destroy, move, injure, obstruct * * * or in any manner whatever impair the usefulness * * * of such work under the control of the United States, in whole or in part, for the preservation and improvement of any of its navigable waters, or to prevent floods, or as boundary marks," etc. The statute, we think, very much broader than the construction given to it by counsel. Before the acts complained of, Congress had provided for a commission to mature such plan or plans and estimates as would correct, permanently locate, and deepen the channel, and protect the banks of the Mississippi river, improve and give safety and ease to the navigation thereof, prevent destructive floods, promote and facilitate commerce, trade, and the postal service, and the Secretary of War was authorized to proceed in the construction of such work. Much discretion in the location of the levee was left to the Secretary of War, as Congress might do. U. S. v. Certain Lands in Narragansett, R. I. (C. C.) 145 Fed. 654; Union Bridge Co. v. U. S., 204 U. S. 364, 27 Sup. Ct. 367, 51 L. Ed. 523. We do not think it should be said that the Secretary of War, in executing the great project contemplated by Congress, not only to improve the navigation of the river but to prevent destructive floods by overflow, was not authorized in many instances to shorten the work and thereby greatly reduce the expense, by departing from the meanderings of the river in places where the purposes contemplated by the

act would be accomplished by constructing the levee across the base of little peninsulas formed by bends in the river.

[3] It is insisted that the condemnation proceedings, acquiring the right of way across the right of way of the Cape Girardeau & Thebes Bridge Terminal Railroad Company were void for the reason that the Secretary of War had no authority to acquire a right of way so remote from the bank of the river. That, however, involves the correctness of the foregoing interpretation of the provisions of the statute. Furthermore, it may be said that that question was not subject to collateral attack in this trial.

As said by Judge Sanborn, writing the opinion of the court in Foltz v. St. Louis S. F. Ry. Co., 60 Fed. 316, 8 C. C. A. 635:

"There are three questions that the trial court must determine in every condemnation proceeding, viz.: First, has the plaintiff corporation legal capacity to exercise the power of eminent domain? Second, is it necessary for the plaintiff to take the land it seeks to condemn? Third, does it seek it for a public use? Every judgment of condemnation is necessarily an affirmative decision of each of these questions. If either of them is erroneously decided, the judgment may be reversed by a writ of error for that purpose. But to hold that either of these questions can be tried de novo in an action of trespass, or of ejectment, or in any other collateral proceeding, would be counter to our views of justice, of the reason of the case, and of the uniform decisions of the courts."

Applying the principle there stated to the case before us, we find that Congress, by an act approved April 24, 1888, 25 Stat. 94 (U. S. Comp. St. 1901, p. 3525) provided as follows:

"That the Secretary of War may cause proceedings to be instituted in the name of the United States in a court having jurisdiction of such proceedings, for the acquirement by condemnation of any land, right of way or material needed to enable him to maintain, operate or prosecute work for the improvement of rivers and harbors for which provision has been made by law, such proceedings to be prosecuted in accordance with the laws relative to suits for condemnation of property in states wherein the proceedings may be instituted."

This gave the Secretary of War authority to institute the proceedings in question as provision had been made by law for the work in question. The court, then, in the condemnation proceedings, had jurisdiction, and its judgment in this proceeding is conclusive of the authority of the Secretary of War to institute condemnation proceedings; that it was necessary to take the land sought; and that it was for a public use.

Such being our view of the proper construction of the statutory provisions referred to, and the proof fully sustaining the allegations of the indictment, the principal assignments of error urged are untenable.

It is, however, further urged that the statute only applies to a completed work and has no application to cases of defacing, injuring, and obstructing levees that are in process of construction simply. This objection is equally untenable. The work, though but partially completed, nevertheless was a levee within the meaning of the statute. Surely Congress did not intend that the government, in prosecuting such a public work, could be obstructed or have the work defaced or

destroyed before being fully completed, and the offender not be amenable to the provisions of the statute. The prohibition clearly includes a levee in process of construction as well as a completed one, for otherwise the government might never be permitted to complete the work. It is also said that, as the work was being constructed by a private contractor, though under the supervision and direction of the Secretary of War, it was not a work of the United States within the meaning of the statute. The mere fact that the physical work was being done by a private contractor for the United States did not take from it its character as a levee built by the United States. It was as much a work of the United States, though built by contract under the direction and supervision of an engineer detailed by the Secretary of War for that purpose, as if it had been done by day laborers employed by the Secretary of War.

From a consideration of the entire case, we find no error committed by the trial court, and the judgment is affirmed.