SINGER SEWING MACH. CO. OF NEW JERSEY v. BENEDICT, Treasurer of the City and County of Denver et al.

(Circuit Court of Appeals, Eighth Circuit. April 27, 1910.)

No. 3,328.

1. APPEAL AND ERROR (§ 870*)—QUESTIONS IN LOWER COURT—SUFFICIENCY OF PRESENTATION.

The objection that a bill states no ground of equity jurisdiction when first taken by demurrer, and on the overruling of the demurrer by answer, may be raised in an appellate court on an appeal from final decree.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3506, 3507; Dec. Dig. § 870.*]

---

**2. TAXATION (§ 608\*)—INJUNCTION AGAINST COLLECTION OF TAX—GROUNDS OF RELIEF.**

Unless a complainant can invoke some recognized ground of equity jurisdiction, the mere illegality or irregularity of a tax complained of gives no right to injunctive relief against its collection.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 1230–1241; Dec. Dig. § 608.\*]

**3. TAXATION (§ 608\*)—INJUNCTION AGAINST COLLECTION OF TAX—EQUITY JURISDICTION.**

Where a state statute requires notice to a property owner of the raising of his assessment, the failure to give such notice renders the action of the taxing officers in levying a tax on the increase without jurisdiction and void, and it is subject to collateral attack whenever any claim of right is asserted under it which excludes the jurisdiction of a court of equity to enjoin collection of the tax on the ground that there is no adequate remedy at law.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 1238, 1239; Dec. Dig. § 608.\*]

**4. TAXATION (§ 608\*)—INJUNCTION AGAINST COLLECTION OF TAX—EQUITY JURISDICTION.**

Where the only methods of collecting a personal tax provided by statute are by distraint of property or by ordinary suit, a bill by a taxpayer alleging facts which show that a tax against him was levied without jurisdiction and is illegal and void, and its illegality could therefore be pleaded in defense to an action for its collection, and such action removed into a federal court if desired, but which does not allege that he has any property subject to distraint, does not state any ground which gives a federal court of equity jurisdiction to grant an injunction restraining the collection of the tax.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 1238, 1239; Dec. Dig. § 608.\*]

Sanborn, Circuit Judge, dissenting.

Appeal from the Circuit Court of the United States for the District of Colorado.

Suit in equity by the Singer Sewing Machine Company of New Jersey against James F. Benedict, Treasurer of the City and County of Denver, and others. Decree for defendants, and complainants appeal. Affirmed.

R. H. Gilmore, for appellant.

Charles R. Brock (Milton Smith, on the brief), for appellees.

Before SANBORN and ADAMS, Circuit Judges, and RINER, District Judge.

ADAMS, Circuit Judge. The Singer Sewing Machine Company, a foreign corporation, made a return of taxable personal property for the year 1905 to the assessor of the city and county of Denver disclosing a value of $3,800. The assessor increased that amount, adding $62,500 more in value of personal property. A tax list or warrant authorizing the collection of taxes from the company on the total amount of $66,300 was afterwards made out and delivered to the city and county treasurer whose duty it became to collect the taxes assessed thereon. Afterwards the company tendered to the treasurer $136.30, the amount of taxes with accrued interest due on $3,800

worth of property as returned by it for taxation, and refused to pay the taxes assessed against the increase of $62,500 on the ground that they were unlawfully imposed and illegal. This was a suit to enjoin the treasurer from proceeding to collect this additional tax, which, it was alleged, he threatened to do.

The real controversy was whether certain moneys, notes, and contracts, which in the regular course of business of the company were temporarily detained at its local office in Denver on their way to their ultimate destination, the home office of the complainant, were taxable in Denver. It was on an average value of these that the assessor based the increase in valuation made by him.

Complainant stated in its bill as reasons for invoking the aid of a court of equity that no notice of an increase in its taxable property was given to the company; that it was thereby deprived of an opportunity to make application to the assessor for redress or appeal to the district or county court for a review of the assessor's action as provided by sections 5639 and 5640 of the Revised Statutes of Colorado; and that it had no adequate remedy at law against the collection of the tax assessed on the increase.

There are no averments in the bill showing any fraud, accident, or mistake which conduced to the overvaluation, any cloud upon title to real estate, or danger of multiplicity of suits, or any averments planting complainant's right to relief upon any other head of equity jurisdiction excepting inadequacy of legal remedy.

We are met at the threshold with the objection that the present bill cannot be sustained because it presents no cause of equitable cognizance, but rather one for which the law courts afford an adequate remedy.

Complainant endeavors to forestall a consideration of this objection on the ground that defendant answered and went to trial on the merits. For that reason it is urged it is now too late to object to the jurisdiction in equity over the subject-matter. The following authorities are cited and relied upon by the complainant's counsel: 1 Daniell's Chancery Pleading & Practice (5th Ed.) pp. 555, 600, et seq.; Wylie v. Coxe, 15 How. 415, 420, 14 L. Ed. 753; New Orleans v. Morris, 105 U. S. 600, 26 L. Ed. 1184; Reynes v. Dumont, 130 U. S. 354, 395, 9 Sup. Ct. 486, 32 L. Ed. 934; Brown v. Lake Superior Iron Co., 134 U. S. 530, 10 Sup. Ct. 604, 33 L. Ed. 1021.

An examination of these and other cases discloses that the rule invoked prevails only when the objection is made for the first time in the appellate court. In the present case jurisdiction in equity was challenged in limine by a demurrer on the specific ground that the bill contained no matter of equity, and upon that being overruled the same objection was again taken by answer. Until the final decree was passed no appeal lay, and the question of jurisdiction over the subject-matter could not before then have been reviewed. Gates v. Bucki, 4 C. C. A. 116, 53 Fed. 961, 964. In such cases an appeal after final decree presents for review the entire record; and if for any reason the decree below was right it will be affirmed.

The objection to our consideration of the jurisdictional question is untenable.

Does the bill disclose a right to the injunctive relief sought? In other words, does it disclose that complainant did not have an adequate remedy at law? These are questions which if answered in favor of defendant render consideration of the merits of the case unnecessary.

The law is well settled that, unless a complainant can invoke some recognized head of equity jurisdiction, the mere illegality or irregularity of a tax complained of gives no right to injunctive relief against its collection. Hannewinkle v. Georgetown, 15 Wall. 547, 21 L. Ed. 231; State Railroad Tax Cases, 92 U. S. 575, 23 L. Ed. 663; Union Pacific Railway Co. v. Cheyenne, 113 U. S. 516, 5 Sup. Ct. 601, 28 L. Ed. 1098; Milwaukee v. Koeffler, 116 U. S. 219, 6 Sup. Ct. 372, 29 L. Ed. 612; Pittsburgh, etc., Ry. Co. v. Board of Pub. Works, 172 U. S. 33, 19 Sup. Ct. 90, 43 L. Ed. 354; Indiana Mfg. Co. v. Koehne, 188 U. S. 681, 23 Sup. Ct. 452, 47 L. Ed. 651; Taylor v. Louisville & N. R. Co., 31 C. C. A. 537, 88 Fed. 350, 357; Hallett v. Arapahoe County, 40 Colo. 308, 90 Pac. 678.

In the Hannewinkle Case, supra, which was a bill to enjoin the collection of a tax claimed to be illegal, the Supreme Court, speaking by Mr. Justice Hunt, said:

"It has been the settled law of the country for a great many years that an injunction bill to restrain the collection of a tax, on the sole ground of the illegality of the tax, cannot be maintained. There must be an allegation of fraud, that it creates a cloud upon the title, that there is apprehension of multiplicity of suits, or some cause presenting a case of equity jurisdiction."

In State Railroad Tax Cases, supra, Mr. Justice Miller, speaking for the court, after quoting from the Hannewinkle Case, said:

"We do not propose to lay down in these cases any absolute limitation of the powers of a court of equity in restraining the collection of illegal taxes; but we may say that, in addition to illegality, hardship, or irregularity, the case must be brought within some of the recognized foundations of equitable jurisdiction."

In Indiana Mfg. Co. v. Koehne, supra, Mr. Justice Peckham, speaking for the court, made these observations:

"It has long been the settled doctrine of the federal courts that the mere illegality of a tax, or the mere fact that a law upon which the tax is founded is unconstitutional, does not entitle a party to relief by injunction against proceedings under the law; but it must appear that the party has no adequate remedy by the ordinary process of the law, or that the case falls under some other recognized head of equity jurisdiction, such as multiplicity of suits, irreparable injury, etc."

From the analysis already made of the bill it appears that it is not grounded upon an equitable foundation like fraud, mistake, avoidance of multiplicity of suits, removing cloud from title to real estate, or any like matter. It rests practically upon the propositions that the tax was illegal and that complainant had no adequate remedy at law to prevent its collection. The claim to equitable relief is stated in the bill in the following words:

"And the plaintiff further says that by reason of the neglect and omission of the county assessor to notify the plaintiff, as provided by the said revenue act, that he had changed the valuation of the plaintiff's personal property as fixed by the plaintiff in its tax schedule from $3,800 to $66,300, and of the other matters and things hereinbefore alleged, the plaintiff is deprived of any remedy at law to redress the wrong imposed upon the plaintiff in this case; that by reason whereof the plaintiff has no speedy and adequate remedy at law, and the threatened proceeding of the defendant, if executed, would work an irreparable injury to the plaintiff, unless restrained by the order of this court, and the plaintiff is compelled to invoke the protection of a court of equity to prevent such threatened injury."

It is said the assessment of complainant's property by the assessor, at a valuation above that returned by it, was an adjudication of the legality of the tax and unassailable except by some direct proceeding like the present bill.

We may concede all that is claimed to follow from a failure to give the notice prescribed by sections 5639 and 5640, Rev. St. 1908; that the notice was a prerequisite to the exercise of jurisdiction to tax the increase made by the assessor. He and other officers acting with him in extending the tax on that increase and issuing the warrant for its collection acted as a special judicial tribunal, and if their judgment was within their jurisdiction it is not subject to collateral attack; but if without their jurisdiction it is subject to such attack. Stanley v. Board of Supervisors, 121 U. S. 535, 550, 7 Sup. Ct. 1234, 30 L. Ed. 1000; McLeod v. Receveur, 18 C. C. A. 188, 71 Fed. 455, 458. Like all judgments in personam whether of special tribunals or courts of general jurisdiction in which there is an absence of service of process or notice or appearance requisite to confer jurisdiction, the assessment in this case was simply void and may be attacked collaterally whenever any claim of right is asserted under it. Pennoyer v. Neff, 95 U. S. 714, 24 L. Ed. 565, and cases cited.

This leaves the sole remaining inquiry whether the bill and proof disclose that in other respects the complainant had no adequate remedy at law for the wrong and injury alleged to have been threatened by the defendant.

The statute of Colorado (section 5750, Rev. St. 1908; section 202, Revenue Act, Approved March 22, 1902, Sess. Laws Colo. 1902, p. 146) providing that the board of county commissioners shall refund to the taxpayer any erroneous or illegal taxes which he may have been compelled to pay has been held by this court (Atchison, T. & S. F. Ry. Co. v. Sullivan, 97 C. C. A. 1, 173 Fed. 456, 470) not to afford an adequate remedy to a taxpayer who has been required to pay an illegal tax, and we therefore omit further consideration of that statute as a basis for legal relief.

Sections 5682 and 5768, Rev. St. 1908 (sections 135 and 220, Revenue Act, 1902, as amended by Act April 11, 1903, Sess. Laws Colo. 1903, p. 407), empowered the treasurer in certain circumstances to enforce collection of taxes upon personal property by distraint and sale of any personal property of the debtor.

But there is neither charge nor proof that complainant had any personal property of any kind in the city or county of Denver at the time this suit was brought, and there are no allegations or proof that com-

plainant would be injured or embarrassed by any distraint or sale of its personal property, or that any such action was threatened by the defendant. The only threat proved at the hearing was contained in a letter of date October 1, 1906, three weeks before this suit was brought, written by the treasurer to complainant, as follows:

"Denver, Colo., Oct. 1, 1906. Singer Sewing Machine Co.: Your personal tax for the year 1905, amounting to $2284.05, is delinquent, and unless paid at once I will be obliged to enforce collection of same according to law. If you compel this course the expense will greatly exceed the amount now demanded. Your attention is directed to the charges and penalties prescribed by law, and printed on the back of this notice, to which you will be subject if it becomes necessary to enforce a collection of your unpaid personal taxes."

Accordingly, we may eliminate any threatened distraint of personal property as a ground upon which injunctive relief is predicated. Even if we could not do so, we do not think the threat to seize personal property for the satisfaction of an illegal tax would by itself entitle the owner to an injunction in equity. It would amount to a trespass for which the injured party could have proper redress in an action at law.

The only other method of collecting the tax in question was by an ordinary suit by the treasurer against the delinquent taxpayer. This was a method provided by section 5677, Rev. St. (Sess. Laws 1902, p. 112), in case the treasurer could not find the property upon which the tax had been levied or any other property sufficient for the satisfaction of the tax, interest, and penalties. If such a suit had been threatened and instituted, complainant would have had an adequate remedy at law to make any defense based upon the illegality of the tax; and this could have been made either in the state court where the action might have been brought or in the federal court by the process of removal if desired by the defendant in the action. We have held that when one has a right to resort to the federal court for the redress of an injury the fact that he may have a remedy at law in a state court is not an adequate remedy within the meaning of the equitable rule under consideration. National Surety Co. v. State Bank, 56 C. C. A. 657, 120 Fed. 593, 602, and cases cited.

Giving the complainant the benefit of that rule, we are of opinion that, whatever action may have been contemplated in the so-called "threatening letter" of the treasurer, the complainant would have had a complete and adequate remedy at law so far as this record discloses for any injury it might have sustained if the threat had been actually put into execution.

Learned counsel for complainant urges that this court in Atchison, T. & S. F. Ry. Co. v. Sullivan, supra, made pronouncements which justify his present contention. We, however, do not think so. That was a case for injunctive relief against unjust, systematic, and intentional discrimination in the valuation of the property of the railway company for the purpose of subjecting it to an undue proportion of the public burden. We were there met with the objection to equitable relief now made by the defendants in this case. That was disposed of by the court, Sanborn, Circuit Judge, speaking for it, in the following language:

"Finally, counsel for the defendant invoke the conceded rule that some recognized ground of equity jurisdiction, and the fact that the complainant has no adequate remedy at law, in addition to the fact that the tax is excessive and illegal, are essential to the maintenance of a suit in equity for injunctive relief, and they insist that no such foundation for this suit has been laid by the proof. * * * Fraud and mistake are ancient heads of equity jurisdiction. The Board of Equalization made a plain mistake, demonstrable by the mere division of their assessment of the corporate plant of the company in the state by the number of miles of railroad they found the company controlled therein, when it certified to the county of Bent its overassessment of the company's property in that county. The systematic and intentional omission of watches, clocks, and jewelry, credits and fat stock by the county assessor from the assessment of the property within his jurisdiction, however innocent in actual intention, was either an intentional fraud upon the complainant or such a gross mistake that it was a fraud in law."

The conclusion cannot be avoided that in that case the rule already laid down in this case that actions of this kind must be grounded upon some recognized head of equity jurisdiction in addition to the mere fact of illegality or erroneousness in the tax sought to be collected was fully recognized and acted upon. The learned judge said the rule here laid down was a "conceded one" and proceeded to demonstrate that the action in that case was founded upon one of the best recognized grounds of equity jurisdiction, namely, actual mistake or intentional fraud.

We have no occasion or disposition to criticise the doctrine of that case; but it has no application to the pleadings or facts of this case.

The burden rested on complainant to aver, and if necessary to prove, facts showing that it had no adequate remedy at law for the wrong threatened to be perpetrated against it.

After a careful consideration of the pleadings and proof, we are satisfied that it has failed in this respect.

The decree of the Circuit Court dismissing the bill must, therefore, be affirmed.

SANBORN, Circuit Judge (dissenting). Propositions of law and fact assumed by the majority and conceded to be sound which condition the decision of this case are these: The mere excess or illegality of a tax will not sustain a bill in equity to avoid it or to restrain its collection in the absence of any ground of equity jurisdiction such as fraud, accident, mistake, or threatened multiplicity of suits and of inadequacy of the remedy at law. One may not be deprived of his property without due process of law by the levy and collection of an illegal tax any more constitutionally than he may by any other proceeding without such process. The due process of law prescribed by the statutes of Colorado, by which the assessment or valuation of the complainant's property that formed the foundation of the tax here in question was to be fixed and adjudicated, was that the complainant should make and deliver to the assessor a schedule of its taxable property and of its value under oath (Rev. St. Colo. 1902, §§ 5573, 5582, 5615), that "the assessor shall, prior to the first Tuesday in August of each year, mail to each person, association or corporation, whose property has been assessed at a valuation other than that given in the schedule filed by such person, association or corporation, a statement of any such

change in valuation, and shall give notice by publication * * * that on the day to be therein named he will sit to hear any and all objections to the assessment roll," that he should hear such objections on that and succeeding days until all grievances were heard (section 5639), that from any decision of the assessor overruling any of its objections to the increase of its assessment the complainant might appeal to the board of county commissioners which might hear all testimony produced and subpœna witnesses to testify, and that from an adverse decision of the board the complainant might appeal to the district court, where the issue should be tried de novo on its merits (section 5641). The complainant filed its verified schedule according to the law, in which it stated that the assessment or valuation of its taxable property was $3,800. The assessor arbitrarily and without good reason raised this assessment to $66,300, but gave the complainant no notice of, and it did not know, that fact so that it had no opportunity to contest this raise before the assessor, before the board of county commissioners, or before the district court. Upon this increased assessment, which was confirmed and sent forward by the assessor without notice, the tax in question has been levied, and it is a perpetual lien on all the personal property upon which it was laid. Section 5676.

The majority are of the opinion that the rational deduction from these assumed or conceded propositions of law and fact is that there is no equity in the bill, while it seems to me that they present good ground for the relief sought by the complainant.

Under the statutes of Colorado, which have been quoted, the assessment roll after the time for a hearing upon the increased assessment passed, and after the roll was confirmed and sent forward by the assessor for the levy, was an adjudication of the assessment of the complainant's property by the quasi judicial tribunal, the assessor, the board of county commissioners, or the district court, empowered by the law to determine its amount.

Does this case present any ground of equitable cognizance? Due process of law is as essential to the taking of one's property by taxation as by a judgment of the court, or by any other proceeding, and due process of law must give "notice to the defendant of the charge or claim against him and an opportunity to be heard respecting the justice of the order or judgment sought from the court if the claim is sustained." In re Wood and Henderson, 210 U. S. 246, 254, 52 L. Ed. 1046;[1] In re Rosser, 41 C. C. A. 497, 501, 101 Fed. 562, 566. In the Colorado scheme of taxation the notice of the increase of the assessment required by section 5639 was the process upon which the whole proceeding was founded. It was the summons to the complainant to appear before the assessor, before the board of county commissioners, and before the district court if it desired and to answer the claim of the county that its taxable property was $62,500 more than it had testified that it was. But this summons was never served, this notice was never given to the complainant, and a judgment by default was rendered against it that its assessment was $62,500 more than it actually was, and that it should pay an unconscionable tax upon this illegal increase. Why was this notice not given? If the asssessor

[1] 28 Sup. Ct. 621.

intentionally withheld it, and knowingly confirmed and sent forward the assessment without giving the notice, he perpetrated a gross fraud upon the complainant. If he did not knowingly or intentionally withhold the notice or fail to give it, he did so by mistake or accident. In either case he brought this suit well within the domain of a court of chancery. Fraud, accident, and mistake are three great heads of equity jurisprudence, and, whenever injustice or wrong irremediable at law is about to result from either, the power is vested in and the duty is imposed upon the courts of equity to prevent the threatened injury. Their jurisdiction rests upon the fact that, unless they act, wrong will be perpetrated which cannot be remedied. The facts of this case seems to me to bring it within these established principles.

Has the complainant a remedy at law in the national courts against the unjust tax as prompt, complete, and efficacious as the remedy by injunction which it seeks? For it is such a remedy in such a court and that alone that may repel it from a federal court of equity. It is conceded on all hands that the assessment roll and the warrant issued thereon are presumptive proof within and without every court of service of the jurisdictional notice, of the validity of the tax, and of the regularity of all prior proceedings. Are they not also conclusive evidence thereof against every attack not supported by averments and proof of fraud, mistake, or some other such equitable ground of relief? And such allegations and proof for the purpose of avoiding such adjudications and enjoining their execution may be heard in the federal courts in suits in equity alone.

It is true that judgments of courts and of quasi judicial tribunals, such as the assessor and the Board of Equalization, are alike open to collateral attack where the subject-matters or the persons thereof cannot be subject to the jurisdiction of such tribunals. Foltz v. St. Louis & S. F. Ry. Co., 60 Fed. 316, 320, 8 C. C. A. 635; In re Sawyer, 124 U. S. 200, 221, 222, 8 Sup. Ct. 482, 31 L. Ed. 402; Whitehead v. Railroad Company, 28 Ark. 460; Lessee of Hickey v. Stewart, 3 How. 751, 11 L. Ed. 814; Bigelow v. Forrest, 9 Wall. 339, 351, 19 L. Ed. 696; Ex parte Lange, 18 Wall. 163, 176, 21 L. Ed. 872. But where, as in the case at bar, the subject-matter and the party are within the potential jurisdiction of the tribunal, in this case the assessor, and its jurisdiction depends upon a fact which might or might not support that jurisdiction, in this case the fact of service of the jurisdictional notice, which the tribunal is empowered and required to ascertain and determine, its decision is conclusive against collateral attack, and it can be avoided only by a direct appeal or a plenary suit for fraud, mistake, or some other equitable ground of relief. Colton v. Beardsley, 38 Barb. (N. Y.) 29, 51, 52, and cases there cited; In re Sawyer, 124 U. S. 200, 220, 221, 8 Sup. Ct. 482, 31 L. Ed. 402; Des Moines Nav. Co. v. Iowa Homestead Co., 123 U. S. 552, 556, 559, 8 Sup. Ct. 217, 31 L. Ed. 202; Rogers v. Penobscot Mining Co., 154 Fed. 606, 609, 83 C. C. A. 380; Foltz v. St. Louis & S. F. Ry. Co., 8 C. C. A. 635, 637, 60 Fed. 316, 318; National Surety Co. v. State Bank, 120 Fed. 593, 600, 56 C. C. A. 657.

The difference between these two classes of cases is noted in Rog-

ers v. Penobscot Mining Company, where it is said that a challenge of the power of the court to take any action in the case under any circumstances is fundamental and subject to examination without a specification of error, while an objection that the jurisdictional notice was not served assails nothing but the method of the exercise of the power of the court, relates to procedure only, and cannot be successfully presented indirectly.   Pennoyer v. Neff, 95 U. S. 714, 721, 722, 24 L. Ed. 565, cited by the majority, well illustrates the distinction.   In that case an indirect attack was made upon a judgment against a person without the jurisdiction of the court which rendered the judgment which was based on the publication of the summons. The fact that the defendant had not been personally served within the territorial jurisdiction of the court was admitted and the judgment was assailed (1) because the affidavit for publication was insufficient to invoke the jurisdiction of the court, and (2) because the court was without any power to acquire jurisdiction of the person of the defendant beyond its territorial jurisdiction.   The Supreme Court decided that advantage of the lack of jurisdiction on the former ground could be taken by a direct attack only, but that on the second ground the judgment was void against a collateral attack.

In Des Moines Nav. Co. v. Iowa Homestead Co., 123 U. S. 552, 556, 559, 8 Sup. Ct. 217, 31 L. Ed. 202, a lack of a diversity of citizenship requisite to give jurisdiction to the Circuit Court which rendered the judgment apparent on the face of the record, and in Re Sawyer, 124 U. S. 220, 221, 8 Sup. Ct. 482, 31 L. Ed. 402, a lack of the requisite amount in controversy to give jurisdiction apparent on the record, were declared to be unavailable to avoid the judgments on collateral attacks.

In Colton v. Beardsley, 38 Barb. (N. Y.) 29, 51, 52, the jurisdiction of a school district to elect a trustee was conditioned by the existence of a vacancy, and that fact was primarily determinable by the remaining trustees.   They had decided that there was a vacancy and had called the election.   The New York court said:

"It is of the essence and nature of such acts, whether the power to perform them is committed to a court or a body of men, or to an individual, that they are final and conclusive except in a direct proceeding for their reversal; and that they cannot be inquired into or questioned collaterally. When the jurisdiction of an inferior tribunal depends upon a fact which such tribunal is required to ascertain and determine by its decision, such decision is final until reversed in a direct proceeding for that purpose. * * * The test of jurisdiction in such cases is whether the tribunal has power to enter upon the inquiry, and not whether its conclusions in the course of it were right or wrong."

In Foltz v. St. Louis & S. F. Ry. Co., 60 Fed., at page 319, 8 C. C. A., at page 637, this court declared:

"Wherever the right and the duty of the court to exercise its jurisdiction depends upon the decision of a question it is invested with power to hear and determine, there its judgment, right or wrong, is impregnable to collateral attack, unless impeached for fraud."

And in National Surety Co. v. State Bank, 120 Fed. 593, 56 C. C. A. 657, we sustained a bill in equity to enjoin the enforcement of a

judgment of a state court on the ground that by mistake the jurisdictional notice had not been served upon the defendant.

The assessor had jurisdiction upon proper notice to the complainant of the subject-matter and of the party to this tax proceeding. He was invested with the power, and it was his duty to ascertain and determine whether or not the jurisdictional notice had been served upon the complainant, and if it had been to confirm the assessment of its property and send it forward for the levy. The assessment roll and the warrant formed the record of his adjudication of this issue, and it seems to me that they and that judgment which they evidence are impervious to collateral attack under the authorities which have been cited, and that they can be avoided or restrained in a federal court only by a plenary suit like that in hand upon the ground of fraud, mistake, or other like basis for relief in equity.

In my opinion the roll and the warrant, until avoided or restrained in equity, constitute a perfect justification of a distraint by the treasurer, a complete answer to an action of trespass in a federal court for such distraint, incontrovertible proof of a cause of action to recover the tax in such a court where equitable defenses are not available in actions at law, and the complainant has no adequate remedy at law for the threatened collection of the unjust tax.

Moreover, the fact that the assessment upon which the defendant relies to support the tax shows property of the complainant of the value of $66,300 within the jurisdiction of the treasurer, together with the legal presumption that a state of things once shown to exist will continue for a reasonable time, seems to me ample proof that the complainant has property liable to respond to the endeavors of the treasurer to collect this tax and a just estoppel of the defendant who did not deny this fact in his answer from denying it now. For these reasons this bill appears to me to disclose an assessment made by fraud or mistake without due process of law upon which a tax has been illegally founded which the defendant is about to collect out of the property of the complainant, and that it will suffer irreparable injury, in that this unconscionable tax will be collected from it and there will be no way in which it may recover it back without this suit in equity, or another of similar character. Here are safe and ample grounds for an injunction against the illegal tax.

The facts and the law seem to me to place this case on all fours with that of National Surety Company v. State Bank, 56 C. C. A. 657, 664, 120 Fed. 593, 600. In that case the surety company, pursuant to a requirement of a statute of Nebraska, appointed the Auditor of the State its attorney on whom process against it might be served in any action. An action was brought against it, the summons therein was served upon the auditor who, by accident or mistake, failed to forward it to the surety company, and a judgment was rendered against it by default in one of the courts of the state of Nebraska for $7,-842.40, on a cause of action to which it had a meritorious defense. A suit was brought in the United States Circuit Court in that district to enjoin the execution of that judgment of the state court. This court quoted the declaration of Chief Justice Marshall in Marine Insurance Company v. Hodgson, 7 Cranch, 332, 336 (3 L. Ed. 362), that:

"Any fact which clearly proves it to be against conscience to execute a judgment, and of which the injured party could not have availed himself in a court of law, or of which he might have availed himself at law, but was prevented by fraud or accident, unmixed with any fault or negligence in himself or his agents, will justify an application to a court of chancery."

—and granted the relief sought.

I am of the opinion that the unconscionable judgment of an assessor rendered through fraud, accident, or mistake without the due process of law and the opportunity to be heard required by the Constitution and the law is not less sacred and is as remediable in equity as the unconscionable judgment of a court.