WESTERN UNION TELEGRAPH CO. v. TRAPP, Auditor, et al.†

(Circuit Court of Appeals, Eighth Circuit. March 18, 1911.)

No. 3,438.

1. TAXATION (§ 604*)—ILLEGAL EXERCISE OF POWER—REMEDY.

The power of taxation is the power to take from the owner that which is his to help defray the expense of the protection received from the government, and, if the power is illegally exercised, it is an invasion of private right, and, in the absence of specific limitation, the party injured may resort to the courts to vindicate his right against those who attempt

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes
† Rehearing denied.

such invasion by any form of action which he could use against any other wrongdoer with respect to the same class of injury.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. § 1228; Dec. Dig. § 604.*

For other definitions, see Words and Phrases, vol. 8, pp. 6867–6886; vol. 8, p. 7813.]

2. COURTS (§ 259*)—FEDERAL COURTS—STATE STATUTES—APPLICATION.

While the state may curtail the jurisdiction of its courts of equity to interfere by injunction in the collection of taxes alleged to be illegal by providing that no injunction shall issue in such case, such a statute has no application to proceedings in the federal courts.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 795; Dec. Dig. § 259.*

State laws as rules of decision in federal courts, see note to Wilson v. Perrin, 11 C. C. A. 71; Hill v. Hite, 29 C. C. A. 553.]

3. TAXATION (§ 608*)—COLLECTION OF TAX—INJUNCTION—GROUNDS.

A suit to enjoin the collection of a tax will not be entertained by a court of equity on the sole ground that the tax is illegal or excessive, but it must also appear that the circumstances are such as to render the remedies at law inadequate.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 1231, 1234; Dec. Dig. § 608.*]

4. COURTS (§ 262*)—FEDERAL COURTS—EQUITY JURISDICTION—LEGAL REMEDIES IN STATE COURT.

Statutory remedies at law furnished by a state in its courts will not oust the equitable jurisdiction of a federal court of equity.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 797, 798; Dec. Dig. § 262.*

Jurisdiction of federal courts as affected by state laws, see note to Barling v. Bank of British North America, 1 C. C. A. 513.]

5. COURTS (§ 262*)—FEDERAL COURTS—JURISDICTION—INJUNCTION AGAINST TAXES—MULTIPLICITY OF SUITS.

Where a suit to enjoin the collection of taxes filed in a federal court of equity was between citizens of different states and involved more than $2,000 exclusive of interest and costs, and the amended bill averred that, if the assessment was allowed to be certified to the various county officers and taxing districts in the state, the unlawful assessments could not be collected except by a multiplicity of suits and by long and costly delays, federal jurisdiction in equity was not ousted because of an alleged adequate remedy at law in the state courts.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 797, 798; Dec. Dig. § 262.*]

6. TAXATION (§ 448*)—ASSESSMENT—PUBLIC SERVICE CORPORATIONS—STATUTES—CONSTRUCTION.

Revenue Act Okl. April 17, 1908 (Laws 1907–08, p. 635) § 6, created a state board of equalization required to examine the various county assessments, and to equalize, correct, and adjust the same as between the counties by increasing or decreasing the aggregate assessed value of the property, or any class thereof, to conform to the fair cash value, and to order and direct the assessment rolls of any county to be corrected, and to adjust the valuation of the real and personal property of the several counties. Section 10 provides that the same officers shall constitute a board of assessors to assess property subject to taxation of all public service corporations doing business within the state, requiring the board to meet on a specified day before meeting as a board of equalization to assess the property of such corporations, etc. Held, that such sections did not create two separate and distinct boards, but that section 10 should be construed as merely providing the mode and manner of valuing the property

of public service corporations, and that the same was not in violation of Const. art. 10, § 21, creating the board of equalization, and providing that such board shall adjust and equalize the valuation of real and personal property, perform such other duties as may be prescribed by law, and shall assess all railroad and public service corporation property.

[Ed. Note.—For other cases, see Taxation, Dec. Dig. § 448.*]

**7.** TAXATION (§ 611*)—ASSESSMENT—SUIT TO ENJOIN—PLEADING.

In a suit to enjoin an assessment of complainant's property, objections that the assessment was invalid because at some meetings of the board of assessment the Attorney General was not present in person, and at other meetings the Secretary of State was not present in person, and because the board in making the assessment included the value of complainant's franchise acquired under the laws of the United States, and that the value of the franchise was not given separately and independently of other property, will not be considered where not raised by the bill.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. § 1250; Dec. Dig. § 611.*]

**8.** TAXATION (§ 611*)—ASSESSMENT—INVALIDITY—COMPLAINT—CONSTRUCTION.

In a suit to restrain the enforcement of an assessment of complainant's property for taxation, an averment that the returns made by complainant to the State Auditor of the value of each item of its property gave due consideration to the value of complainant's franchise within the state not derived from the United States, the same being of small value because complainant had not at any time been able and was not permitted to earn a sufficient amount to maintain and operate its telegraph system within the state, was not equivalent to an affirmative averment that any part of complainant's franchise within the state was derived from the United States.

[Ed. Note.—For other cases, see Taxation, Dec. Dig. § 611.*]

**9.** TAXATION (§ 8*)—CORPORATIONS—FRANCHISES—ACQUISITION FROM UNITED STATES.

The fact that a corporation of one state derived its franchise from the United States under Act Cong. July 24, 1866, c. 230, 14 Stat. 221, providing for the establishment of telegraph lines along post roads, etc., did not relieve the corporation from the burdens of taxation in another state in which it had property.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. § 21; Dec. Dig. § 8.*]

**10.** CONSTITUTIONAL LAW (§ 284*)—DUE PROCESS OF LAW—TAXATION—ASSESSMENT—NOTICE OF HEARING.

Where it affirmatively appeared that complainant had notice and appeared before the board of assessors, and was heard in relation to the assessment of its property made pursuant to Revenue Act Okl. April 17, 1908 (Laws 1907-08, p. 633), the fact that no formal notice was served because the statute fixed an impossible date for the meeting of the board of assessors for the year 1908 did not render the assessment invalid as taking of complainant's property without due process of law.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 893-896; Dec. Dig. § 284.*]

**11.** TAXATION (§ 493*)—VALUATION OF PROPERTY—REVIEW BY COURTS.

The judgment of a state board empowered to fix the valuation of property for taxation cannot be set aside on proof that the valuation was other than that fixed by the board, where there was no evidence of fraud, and no gross error in the system on which the valuations were made.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 876-883; Dec. Dig. § 493.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

12. TAXATION (§ 493\*)—ASSESSMENT—INEQUALITY.

On the issue whether there was an intentional reduction of property other than that of public corporations by the state board of equalization, it would be presumed that there was no such intentional reduction; the burden of proving the contrary being on the complainant.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. § 881; Dec. Dig. § 493.\*]

Appeal from the Circuit Court of the United States for the Western District of Oklahoma.

Suit by the Western Union Telegraph Company against M. E. Trapp, as Auditor, and others. From a decree dismissing the bill, complainant appeals. Affirmed.

S. T. Bledsoe (J. R. Cottingham, on the brief, and G. H. Fearons and Francis N. Whitney, of counsel), for appellant.

Charles West, Atty. Gen. of Oklahoma, for appellees.

Before ADAMS, Circuit Judge, and RINER and WM. H. MUNGER, District Judges.

RINER, District Judge. The parties are arranged in this court as they were in the court below, the appellant being the complainant in the court below, and the appellees the defendants in the court below, and will be hereafter referred to as complainant and defendants, respectively.

The amended bill challenges the assessment of complainant's property for taxation in the state of Oklahoma for the year 1908, and the relief sought is an injunction enjoining the state board of assessors, composed of the Governor, State Auditor, State Treasurer, Secretary of State, Attorney General, State Inspector and Examiner, and President of the Board of Agriculture, and especially the State Auditor, from certifying the assessment made by the board to the various counties of the state for extension on the tax roll.

It is averred in the bill that pursuant to the requirements of the laws of Oklahoma complainant filed with the state board of assessors a complete statement of all its properties in the state of Oklahoma, with a correct statement of the actual cash value of each item thereof, including the franchise rights in connection therewith; that the board increased the value of its property to three times the amount at which it had been returned; that the valuation as made was arbitrarily made without any justification or excuse; that the act of the board of assessors in so valuing the property of the complainant was fraudulent and wrongful and amounted to denying the complainant the equal protection of the laws and the taking of its property without due process of law; that the board of assessors in so valuing its property intentionally overvalued the same in order to impose upon complainant a greater part than its just share of the burden of taxation. It is further averred that the property of other citizens of the state was assessed at less than 75 per cent. of its actual cash value; that the property of complainant of like character as that owned by other citizens of the state was assessed at three times its actual cash value;

---

\*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

that such under assessment of the property of other persons and corporations, other than public service corporations, located in the state of Oklahoma, was made by the board of equalization systematically, intentionally, and purposely, and that, unless enjoined, it would cause the same to be certified to the county officers of the several counties of the state upon the records thereof for the purpose of taxation, thus casting upon the complainant more than its just share of the burden of taxation. It is also alleged in the bill that the state board of equalization which equalized the property of the counties was required by the Constitution of the state to assess the property of complainant, but that said board did not do so, but the same was assessed by the board of assessors of the state in violation of the terms of the Constitution of the state; that the board of equalization and the board of assessors were two separate and independent bodies, each acting in a regularly organized capacity, keeping minutes of its proceedings and actions in matters coming before it; that the boards acting separately did so in recognition of the Constitution and statutory provisions that they were separate and distinct tribunals, at no time exercising a common jurisdiction. It is further averred that in doing all of the wrongful acts complained of defendants were acting in their official capacity as members of the state board of assessors pursuant to a statute of Oklahoma approved on the 17th of April, 1908; that the assessment was wholly void because of the (1) arbitrary, wrongful, and fraudulent action of the board in assessing the property of complainant at three times the value of the property returned by complainant; (2) under the Constitution of the state of Oklahoma (article 10, § 21) a state board of equalization is created, and it is made the duty of the board to adjust and equalize the valuation of the real and personal property in the several counties in the state and to perform such other duties as may be prescribed by law, and to assess all railroad and public service corporation property; that, inasmuch as the Constitution of the state provided that this property should be assessed by the state board of equalization, the provisions of the statute creating a board of assessors is invalid as being in conflict with the Constitution of the state, and that the assessment made by the board of assessors is a nullity and of no validity whatever; (3) because both the value fixed upon the property of complainant was much greater than its fair cash value, and the general property of the state was assessed at less than 75 per cent. of its cash value, which resulted in placing a greater burden upon the complainant's property than was placed upon other property taxed in this state, in violation of the provisions of the Constitution of the United States, and of article 5 of the Constitution of the State of Oklahoma; (4) that under and by virtue of the provisions of section 21, art. 10, of the Constitution of Oklahoma, it is made the duty of the state board of equalization to adjust and equalize the valuation of the real and personal property of the several counties in the state other than public service corporations, but, that neither the Constitution nor the statute under which the state board of equalization and the board of assessors assumed to act makes any provision for equalizing the assessment of the property which is assessed by the board of

assessors, either as between the various properties assessed by the board or with the other property in the state assessed by the various local assessing officers; that therefore complainant has been denied the equal protection of the laws; (5) because the law creating the board of assessors does not provide for giving any notice to persons or corporations, whose property is to be assessed by it, of the time or place when the board shall consider the return made by it and assess its property for the purpose of taxation.

After averring its willingness to pay the taxes justly due, the bill prays for an injunction enjoining the board and the auditor from acting and dealing with the assessment as a valid and lawful assessment of the property of the complainant, and from certifying the same to the county and other officers of the state. The averments of the amended bill were put in issue by answers by the several defendants, and replications filed to these answers. Testimony was taken, and the case was brought on for final hearing, resulting in a decree dismissing the bill.

[5] It was suggested at the oral argument, and is repeated in the brief filed on behalf of the appellees, that the Circuit Court was without jurisdiction to hear and determine this suit because there was an adequate remedy at law. This suggestion will be first noticed, because, if the Circuit Court was without jurisdiction, its decree would have no force and effect, and this appeal should be dismissed.

The record shows that the complainant is a citizen of the state of New York, that the defendants were all citizens of the state of Oklahoma, and that the amount involved in the suit exceeds the sum of $2,000, exclusive of interest and costs. The Constitution and laws of the United States confer upon the Circuit Courts jurisdiction to hear and determine controversies at law and in equity between citizens of different states in which there is involved more than $2,000, exclusive of interest and costs. This cannot be said to be a suit against the state within the eleventh amendment to the federal Constitution, although the board consists wholly of state officers. It is a suit brought by a taxpayer in which it is charged that the defendants are about to execute a taxing law of the state against the complainant in such a manner that, in view of the mode in which other taxing laws are executed against a large part of the taxable property of the state, the defendants will impose upon the complainant more than its just share of the burden of taxation in violation of its right under the Constitution of the state to pay only an equal share of the taxes in proportion to the value of its property. In other words, it is a suit against individuals by which it is sought to enjoin them from doing certain acts which they assert to be by the authority of the state, but which the complainant avers in its bill is without lawful authority. Huidekoper v. Hadley, 177 Fed. 1, 100 C. C. A. 395; Smyth v. Ames, 169 U. S. 518, 18 Sup. Ct. 418, 42 L. Ed. 819; Reagan v. Trust Co., 154 U. S. 362, 14 Sup. Ct. 1047, 38 L. Ed. 1014; Pennoyer v. McConnaughy, 140 U. S. 1, 11 Sup. Ct. 699, 35 L. Ed. 363; Poindexter v. Greenhow, 114 U. S. 270, 5 Sup. Ct. 903, 962, 29 L. Ed. 185; Cummings v. Bank, 101 U. S. 153, 25 L. Ed. 903.

[1] The power of taxation is the power to take from the owner that which is his to help defray the expense of the protection received from the government, and, if in any case this power is illegally exercised, it is an invasion of private right, and in the absence of some specific limitation of the remedy, imposed by law, the party injured may resort to the courts to vindicate his right against those who attempt such invasion by any form of action which he could use against any other wrongdoer with respect to the same class of wrongs.

[2] It is quite true that the state may curtail the jurisdiction of its courts of equity to interfere by injunction in the collection of taxes alleged to be illegal by providing that no injunction shall issue in such case. The United States has made such a limitation. Revised Statutes U. S. § 3224 (U. S. Comp. St. 1901, p. 2088). Our attention has not been called to any law of Oklahoma containing such limitation, but, if such law exists, it affects only the jurisdiction of its own courts of equity, and does not diminish or restrict the jurisdiction of federal courts of equity, because only an act of Congress can do that. In re Tyler, 149 U. S. 164, 13 Sup. Ct. 785, 37 L. Ed. 689; Mississippi Mills v. Cohn, 150 U. S. 202, 14 Sup. Ct. 75, 37 L. Ed. 1052; Furnace Co. v. Witherow, 149 U. S. 574, 13 Sup. Ct. 936, 37 L. Ed. 853; Kirby v. Railway Co., 120 U. S. 130, 7 Sup. Ct. 430, 30 L. Ed. 569. If the suit is one over which the Circuit Court of the United States sitting in equity has jurisdiction by virtue of the Constitution and laws of the United States and according to the general principles governing equity jurisdiction, the power to issue an injunction against state officers is not restricted by a state statute which only applies to injunctions issued out of the state courts. As already suggested, the Circuit Court has jurisdiction in a suit between citizens of different states, and it is only necessary to inquire whether any ground exists for invoking the powers of a court of equity.

[3] It is settled law that a suit to enjoin the collection of a tax will not be entertained by a court of equity on the sole ground that the tax is illegal or excessive. It must be made to appear that the circumstances make the wrong complained of of such a peculiar character that the remedies in a court of law are inadequate, and thus bring the case under some recognized head of equity jurisdiction. Singer Sewing Machine Co. of New Jersey v. Benedict, 179 Fed. 628, 103 C. C. A. 186; Ogden City v. Armstrong, 168 U. S. 224, 18 Sup. Ct. 98, 42 L. Ed. 444; Express Co. v. Seibert, 142 U. S. 339, 12 Sup. Ct. 250, 35 L. Ed. 1035; Allen v. Car Co., 139 U. S. 658, 11 Sup. Ct. 682, 35 L. Ed. 303; Railway Co. v. Cheyenne, 113 U. S. 516, 5 Sup. Ct. 601, 28 L. Ed. 1098. It is averred in the amended bill in this suit that, if the assessment made by the defendants is allowed to be certified to the various county officers and taxing districts in the state of Oklahoma, the unlawful assessments cannot be collected "except by a multiplicity of suits and by long and costly delays thereon." To prevent a multiplicity of suits is a well-recognized head of equity jurisdiction. Dows v. City of Chicago, 11 Wall. 108, 20 L. Ed. 65; Shelton v. Platt, 139 U. S. 591, 11 Sup. Ct. 646, 35 L. Ed. 273; Express Co. v. Seibert, 142 U. S. 339, 12 Sup. Ct. 250, 35 L. Ed. 1035; San-

ford v. Poe, 69 Fed. 546, 16 C. C. A. 305, 60 L. R. A. 641. But it is said that the complainant had an adequate remedy at law, under the Constitution and laws of Oklahoma, in the state court.

[4] The rule is that statutory remedies at law furnished by a state in its courts will not oust the equitable jurisdiction of a federal court of equity. Smyth v. Ames, 169 U. S. 466, 18 Sup. Ct. 418, 42 L. Ed. 819. In that case Justice Harlan said:

"One who is entitled to sue in the federal Circuit Court may invoke its jurisdiction in equity whenever the established principles and rules of equity permit such a suit in that court, and he cannot be deprived of that right by reason of his being allowed to sue at law in a state court on the same cause of action."

See, also, Payne v. Hook, 7 Wall. 425, 19 L. Ed. 260; In re Tyler, 149 U. S. 164, 13 Sup. Ct. 785, 37 L. Ed. 689; McConihay v. Wright, 121 U. S. 201, 7 Sup. Ct. 940, 30 L. Ed. 932. The conclusion reached is that the Circuit Court had jurisdiction.

[6] We come now to consider the merits of the amended bill and the issues raised by it. The provision of the state Constitution, which it is contended has been violated, is section 21, art. 10, and is as follows:

"Sec. 21. There shall be a state board of equalization, consisting of the Governor, State Auditor, State Treasurer, Secretary of State, Attorney General, State Inspector and Examiner, and President of the Board of Agriculture. The duty of said board shall be to adjust and equalize the valuation of real and personal property of the several counties in the state, and it shall perform such other duties as may be prescribed by law, and they shall assess all railroad and public service corporation property."

Legislation was necessary to render this provision of the Constitution operative, for it provides that "the board shall perform such other duties as may be prescribed by law." The Legislature by an act approved April 17, 1908, known as the revenue act, attempted to supply this legislation. Sections 6 and 10 are the only two sections of the act requiring consideration, and are as follows:

"Sec. 6. The Governor, State Auditor, State Treasurer, Secretary of State, Attorney General, State Examiner and Inspector, and President of the Board of Agriculture, shall constitute the state board of equalization, and said board of equalization shall hold a session at the capitol of the state, commencing on the first Monday in August of said year.

"It shall be the duty of said board to examine the various county assessments, and to equalize, correct and adjust the same as between the counties by increasing or decreasing the aggregate assessed value of the property, or any class thereof, in any way or all of them, to conform to the fair cash value thereof as herein defined, and to order and direct the assessment rolls of any county in this state to be so corrected as to adjust and equalize the valuation of the real and personal property of the several counties in the state."

"Sec. 10. The Governor, State Auditor, State Treasurer, Secretary of State, Attorney General, State Examiner and Inspector, and President of the Board of Agriculture, shall constitute the board of assessors for the purpose of assessing the property subject to taxation under the law of all public service corporations doing business in this state. Said board shall meet at the capitol on the first Tuesday of March, 1908, or as soon thereafter as practicable, for the purpose of making the assessment on such properties, and shall assess said properties in the manner provided by the Constitution and laws of this state, taking into consideration all rights, privileges and

franchises connected therewith, and shall cause said assessment to be certified by the State Auditor to the county clerks of the several counties of the state in a manner provided by law. For the purpose of making said assesment, said board of assessors shall have power to require of any such corporations any additional information concerning its business and affairs to that now provided by law as it may deem necessary, and shall have the power of the District Court to compel the production of books and papers. Public service corporations as used in this section shall, in addition to those mentioned in the Constitution, be held to include pipe lines, waterworks, electric light and power and gas companies. The information furnished by any officer, agent or employé or other representative of any corporation by affidavit or otherwise shall not be binding on the Board of Assessors or Board of Equalization as to the property and values thereon owned by such corporation or used any place within this state; but such board of assessment and such board of equalization are authorized to add any additional property and to increase the valuation of any such property in order to obtain a full and complete list and schedule thereof at its actual cash value."

It will be observed that section 6 fixes the time when the board shall meet as a board of equalization, and makes it the duty of the board to examine the values of the assessments, and to equalize, correct, and adjust the same between the counties upon the basis of a fair cash value, and that section 10 constitutes the same officers a board of assessors for the purpose of assessing the property of public service corporations doing business within the state, and fixes the time when the board shall meet as a board of assessors. It specifies what shall be included in such assessment; provides that the auditor shall certify to the county clerks of the several counties of the state the assessment so made; confers upon the board the power to require any public service corporation to furnish information concerning its property; and authorizes the board of equalization to add any property not returned, and "to increase the valuation of any such property in order to obtain a full and complete list and schedule thereof at its actual cash value." It is insisted by complainant that by this legislation two separate and distinct boards were created; that section 6 created a board of equalization, and that by section 10 another and independent board was created for the purpose of assessing public service corporations.

If it be true that the assessment was made by a board other than the board authorized by the Constitution to make the assessment, its acts would be invalid. It becomes important, therefore, to determine whether this legislation created two separate boards, or merely provided the manner in which the same board should perform its duties as a board of equalization and as a board of assessors. This depends upon the proper construction of the statute. The statute must, of course, be so construed, if possible, as to avoid conflict with the Constitution. A clear statement of the rule is found in Lewis' Sutherland's Statutory Construction (2d Ed.) § 83, where it is said:

"Another universal principle applied in considering constitutional questions is that an act should be so construed, if possible, as to avoid conflict with the Constitution, although such a construction may not be the most obvious or natural one. Courts may resort to an implication to sustain a statute, but not to destroy it. But the courts cannot go beyond the province of legitimate construction in order to save a statute, and where the meaning is plain, words cannot be read into them or out of them for that purpose."

Applying this rule to the statute under consideration, we do not think it can be said that the Legislature intended to, or did, create two separate and distinct boards. The same officers perform the double function of equalizing the assessment of property other than that of public service corporations, and of assessing the property of public service corporations. The statute, as we view it, merely prescribes the time and manner in which the board created by the constitutional provision should perform its dual duty of equalizing, as provided in section 6, and assessing, as provided in section 10. It is true the statute would perhaps have been plainer if it had simply provided when the board mentioned in section 6 should meet for the purpose of assessing the property of public service corporations, and the mode and manner of doing so, instead of enumerating again, as it does in section 10, the same officers mentioned in section 6; but in view of the provision of the Constitution that these officers shall constitute a board of equalization, and that the duty of such board shall be to equalize the assessed valuation of other property in the various counties of the state, to assess the property of railroad and public service corporations within the state, and perform such other duties as shall be prescribed by law, we think it would be a strained and unwarranted construction of this statute to hold that merely because the same officers are mentioned in both sections the Legislature intended thereby to create two separate and distinct boards in direct violation of the plain provisions of the Constitution.

[7] But it is said that the assessment is invalid because it appears from the record that at some of the meetings of the board the Attorney General of the state was not present in person, but was represented by his assistant, and that at other meetings of the board the Secretary of State was not present in person, but by his deputy. The record, however, shows that a majority of the board was present at every meeting; but, be this as it may, the objection is without merit, for the reason that there is no averment in the bill that every member of the board was not present at all the meetings, and the rule is that evidence cannot be regarded unless it relates to some issue of fact made by the pleading. In Cucullu v. Hernandez, 103 U. S. 105–116, 26 L. Ed. 322, the court said:

"The evidence to show the facts on which this claim is based cannot be regarded, for there is no averment in the bill to which it can be applied. It is not pertinent to any issue in the case."

The same suggestion applies to the objection that the assessment is void because the board in making the assessment included the value of complainant's franchise acquired under the laws of the United States, and that the value of such franchise was not given separately and independently from other property, but was included in the total valuation in such a way that no separation could be made. There is no averment in the bill that complainant's franchise, or any portion of it, was acquired under any law of the United States. [8] The only averment approaching it is:

"That the returns made by your orator to the Auditor of the State of the value of each item of its property were made giving due consideration

to the value of such franchise as it may have in the state not derived from the United States, which are of small value because your orator has not at any time been able, and is not now permitted, to earn a sufficient amount to pay the cost of maintaining and operating its telegraph system within the state."

This is not equivalent to an affirmative averment that any part of complainant's franchise within the state of Oklahoma was derived from the United States; neither is it charged in the bill that the board considered, in arriving at its valuation of complainant's property, any franchise derived from the United States, and the evidence that the complainant accepted the provisions of the act of Congress of July 24, 1866 (chapter 230, 14 Stat. 221), must therefore be disregarded.

[9] If, however, we were to hold the averment above quoted sufficient, and that the evidence could be considered, it would not aid the complainant's case, for it has been repeatedly held by the Supreme Court that the mere fact that a corporation of one state derived its franchise from the United States under the act of July 24, 1866, does not relieve it from the burdens of taxation in another state in which it has property. In Western Union Telegraph Co. v. Massachusetts, 125 U. S. 548, 8 Sup. Ct. 963, 31 L. Ed. 790, Mr. Justice Miller, speaking for the court, said:

"This, however, is merely a permissive statute, and there is no expression in it which implies that this permission to extend its lines along roads not built or owned by the United States, or over and under navigable streams, or over bridges not built or owned by the Federal government, carries with it any exemption from the ordinary burdens of taxation. * * * It never could have been intended by the Congress of the United States in conferring upon a corporation of one state the authority to enter the territory of any other state and erect its poles and lines therein to establish the proposition that such a company owed no obedience to the laws of the state into which it thus entered, and was under no obligation to pay its fair proportion of the taxes necessary to its support."

See, also, Western Union Telegraph Co. v. Taggart, 163 U. S. 1, 16 Sup. Ct. 1054, 41 L. Ed. 49; Western Telegraph Co. v. Gottlieb, 190 U. S. 412, 23 Sup. Ct. 730, 47 L. Ed. 1116; Telegraph Company v. Texas, 105 U. S. 460, 26 L. Ed. 1067.

[10] It is also suggested that, as the law made no provisions for notice or any opportunity to be heard, the complainant is deprived of its property without due process of law in violation of the provisions of the Constitution of the United States. It is quite true that for this particular year, 1908, for the board of equalization to sit as a board of assessors the statute fixed an impossible date, namely, the second Tuesday of March, whereas the act was not approved until the 17th of April. The object and purpose of a notice is that the taxpayer may have an opportunity to appear before the board, and be heard in relation to his assessment. If, however, as appears affirmatively by the record in this case, the complainant had notice and appeared before the board and was heard in relation to the assessment of its property, the mere fact that a formal notice was not served upon it would not render the proceeding void.

[11] Neither do we think there is merit in the suggestion that the assessment is void because the board, in valuing the complainant's

property, valued it higher than the relative value of other property subject to taxation in the state. The rule is:

"The judgment of a state board empowered to fix the valuation for taxation cannot be set aside by the testimony of witnesses that the valuation was other than that fixed by the board, where there is no evidence of fraud and no gross error in the system on which the valuations were made." Railway Co. v. Backus, 154 U. S. 421, 14 Sup. Ct. 1114, 38 L. Ed. 1031; Adams Express Co. v. Ohio, 165 U. S. 194, 17 Sup. Ct. 305, 41 L. Ed. 683; Coulter v. Louisville & Nashville Rd. Co., 196 U. S. 599, 25 Sup. Ct. 342, 49 L. Ed. 615; C., B. & Q. Ry. Co. v. Babcock, 204 U. S. 585, 27 Sup. Ct. 326, 51 L. Ed. 636.

The record shows that there was a reduction of the valuation on real estate and other property assessed by the township officers, and after local equalization by the county commissioners certified by the counties to the State Auditor. But this was not true of all the property. There was an increase of 4.3 per cent. on pleasure carriages, 7.9 per cent. on watches, 85.3 per cent. on plate and jewelry, 41.2 per cent. on pianos, a reduction of 21.3 per cent. on land, 16.9 per cent. on town lots, and an average reduction upon all property of about 17 per cent. This increase and decrease was based on the assessed valuation fixed by the various county boards of equalization. There is testimony in the record tending to show the actual cash value of property in the various counties, and this testimony, taken in connection with the original assessments as returned by the county assessors and the general changes made by the state board of equalization, is quite persuasive that the board did not reach exact cash values. But it falls far short of establishing that there was any actual fraud on the part of the board, or that the individual members were actuated by any purpose of intentionally undervaluing the property returned by the several counties for the purpose of making the complainant bear more than its just share of the burden of taxation.

[12] In determining whether there was an intentional reduction of property other than that of public service corporations, we start out with the presumption of right action on the part of the board, and that the members thereof conscientiously discharged their duties under their oaths of office, and the burden is upon the complainant to show the contrary. The record in this case shows that at the hearing before the board numerous complaints from different parts of the state were made to the board of excessive assessments; also requests to leave the assessments unchanged; that discussions were had by the board developing contrary opinions, all resulting in the action taken. For the complainant, the evidence, or practically all of it, is circumstantial, while the evidence offered on behalf of the defendants tends to refute any intention to depart from a cash valuation.

While we have not discussed the assignments of error separately, they have all been carefully considered in connection with the record, and we think the evidence fails to warrant the conclusion that the board intentionally undervalued these assessments returned to the Auditor by the several counties, and that, if the property returned by the counties was reduced below its actual cash value, it was an error of judgment rather than any purpose on the part of the board to under-

value this class of property. Coulter v. Rd. Co., 196 U. S. 599, 25 Sup. Ct. 342, 49 L. Ed. 615; C., B. & Q. Ry. Co. v. Babcock, Treasurer, etc., 204 U. S. 585, 27 Sup. Ct. 326, 51 L. Ed. 636.

The decree of the Circuit Court is affirmed.